# APPENDIX C.

# DECISIONS OF SINGLE JUSTICES OF THE SUPREME COURT,

## NOT APPEALED FROM AND NOT HITHERTO REPORTED.

### SHERMAN PECK *et al. vs.* EDWARD BAILEY.

IN EQUITY. BEFORE ALLEN, C.J.

DECISION RENDERED FEBRUARY 4, 1867. NOT HITHERTO
REPORTED.

An easement appurtenant to land will pass by a grant of the land, without
mention being made of the easement.

A riparian proprietor has a right, as an incident to his estate, to use the
water for irrigation and domestic purposes, provided he does not
materially diminish the supply of water or render useless its applica-
tion by others; but his riparian rights are subject to the prescriptive
rights of others.

The owner of an Ahupuaa may apply the water belonging to it to what
land he pleases, but upon his conveyance of portions of the Ahupuaa
to several persons, each grantee, in the absence of an additional grant
of water rights to any of them, will hold the right to all the water
which the portion of land purchased by him had enjoyed from time
immemorial; the grantee of the larger portion of the Ahupuaa has no
superior rights as lord paramount.

A party who has acquired a prescriptive right to use a certain quantity of
water in a certain ditch for certain purposes on a certain piece of land,
may alter the course of the ditch and use the water for other purposes
on another piece of land, provided the changes do not affect injurious-
ly the rights of others.

No prescriptive right can be acquired to the overflow of water from ad-
jacent lands, however long continued, where the overflow is merely
by way of drainage and not in a regular water course or under a claim
of right.

The complainants in this bill allege that they are the owners of a sugar plantation and mill, situated on the Wailuku river, on the Island of Maui, and that the said river continues its whole course through their plantation, and has so flowed from time immemorial, from which are two lateral water courses, which supply water for the use of the said mill and plantation, and which they are entitled fully to enjoy. The complainants further allege that their title is derived almost entirely from the konohiki of the Ahupuaa of Wailuku, whom they allege had the right of lord paramount over the Wailuku river as an appurtenance to his Ahupuaa, and they allege that the defendant has no right of water in the said stream, except that which was allotted by the konohiki for the use of certain taro patches of defendant, which they aver was much less than the defendant has diverted to his use, and to the injury of complainants.

The complainants allege that the defendant has, by a dam and other means, illegally and wrongfully diverted the water of Wailuku river from their mill and premises, which has caused great interruption to the use of their mill and injury to their cane. The complainants further allege that the defendant has extended the water course, which supplied his kalo land, so that it watered kula land of defendant which never was and is not now entitled to water, and thereby has diverted a large quantity of water from its usual course, and which from time immemorial has had its flow to the mill and, premises of complainants. The complainants pray that the defendant may be restrained by the injunction of this Court from making this illegal diversion of the water of the Wailuku river, as it has prevented the water flowing to the mill and premises of complainants in such regular quantities as they are entitled to, and to their great injury.

Defendant admits title to the land in occupancy of complainants, but denies their rights as lord paramount of Wailuku river, and claims that he has not used more water than he is entitled to by prescriptive right, immemorial usage, and the law of the Kingdom; that he has not dammed the Wailuku river any further than was necessary to make the usual diversion of water

into the Kamaauwai. He admits that he has dried up some taro patches and transferred the water to another portion of his cane land, which he contends he had a legal right to do. He further alleges that the complainants have diverted the water from their own mill and premises by enlarging the ancient water course called Kalaniauwai, which had its head above the water courses which conducted water to the mill and premises of complainants, as well as the Kamaauwai, which water passed to the mill and lands of defendant.

The defendant alleges that complainants diverted this water, a large portion of which had always run in the Wailuku river, and used it for the irrigation of large quantities of cane land on the north side of the river, which is the opposite side from the mill and premises of complainants. The issue is substantially this, viz :

1st. The complainants claim the rights of lord paramount over the Wailuku river.

2nd. They allege that the defendant has wrongfully diverted from their mill and premises more water than he was legally entitled to by the Kamaauwai, to the great injury of their mill and cane.

3rd. They allege that by the extension of the Kamaauwai beyond its original and true terminus, the defendant has conveyed an undue quantity of water—far more than he was entitled on the twelve acres of kalo land, called Kapohakuokauhi—on to his kula land beyond, and also that he has illegally diverted this water from the kalo patches, as the surplus had always passed over the road, adjacent to which they were situated, and watered complainants' land below.

The title of the land held by both parties, the rights and privileges of which are called in question, is derived from the King, and from the award of the Land Commission, on which Royal Patents have issued, or which are entitled to the same on complying with the usual conditions. By the Act passed on the 7th day of June, 1848, by the King, in co-operation with the Nobles and Representatives, a division of the lands of the Kingdom was made, in which certain lands were declared to be the

private lands of His Majesty Kamehameha III, to have and to hold, himself, his heirs, and successors forever, and said lands to be regulated and disposed of according to his royal will and pleasure, and subject only to the rights of tenants. The Ahupuaa of Wailuku was one of these lands. It is admitted that the water courses known as Kamaauwai, Kalaniauwai, and the mill water course so called, have been used from time immemorial and they were the entire property of the King subject to the rights of tenants. This property became by inheritance the property of Kamehameha IV., from whom the parties derive title to the greater part of the lands which have been referred to in the investigation of this case. These lands were conveyed, with all the privileges and appurtenances annexed to them by law, in the usual form of a warranty deed, and without any peculiar grants to either.

There can be no difference of opinion that the complainants were entitled to all the water rights which the lands had by prescription at the date of their title. By the deed, the water courses were conveyed and a right to the water accustomed to flow in them. The same principle applies to all the lands conveyed by the King, or awarded by the Land Commission. If any of the lands were entitled to water by immemorial usage, this right was included in the conveyance as an appurtenance. An easement appurtenant to land will pass by a grant of the land, without mention being made of the easement or the appurtenances. But if lands had not such rights, and no additional grant of water rights was made, it certainly could take nothing by having been a portion of the Ahupuaa. It appears by the deed of the land of complainants, on the north side of the river, that the land although comprising several hundred acres is bounded by the river only by a small portion of it. How far this would affect its riparian rights, is not material in this case, for the reason that the right which it enjoys by the Kalaniauwai is far more than its riparian right—all riparian proprietors have taken this conveyance, subject to the rights of others enjoyed by prescription. So if a riparian proprietor should interfere with an ancient auwai, by which other lands had been watered from

time immemorial, he would be liable in damages, because this was clearly an easement for the benefit of those lands through which the ancient water course extended. A sound distinction is recognized between the right to enjoy water in its natural state, and that which is created by artificial means. A riparian proprietor has the right to enjoy the benefits of a flow of water, as an incident to his estate, and he can use the water for irrigation, watering his cattle, and other domestic purposes, provided he does not materially diminish the supply of water or render useless its application by others. Washburn, in his 2 vol. Real Property, p. 65, says a right to interfere with the natural right to make use of water belonging to another, when it is connected with the occupation of lands, constitutes an easement in favor of the latter, as the dominant estate. Such an easement may be acquired by grant, or by adverse enjoyment so long continued as to raise a legal presumption of a grant.

The complainants contend that they have the right of lord paramount to the Wailuku river. The grantor of a large portion of the complainants' land had the same right as his ancestor, who was the konohiki of this Ahupuaa, subject to the rights of tenants, which were afterwards confirmed by the Land Commission. These rights were certain taro patches and the water necessary for their cultivation. This was a limitation to the entire control of the river.

The grantor of complainants has conveyed portions of this Ahupuaa to several persons. Each grantee will hold all that has been conveyed to him, unless it should conflict with a previous conveyance. This includes the water courses on their lands, and all the water which the lands had enjoyed from time immemorial. The deeds to defendants were from the same source originally and conveyed similar rights and privileges as appurtenant. So it appears by the deeds to the complainants and defendant, that a large part of the Ahupuaa has been conveyed to them by the konohiki, with all the rights and privileges appertaining. By the evidence it appears that there are large valuable water rights appurtenant to these lands. It is very evident, therefore, that the complainants cannot be lords paramount

over the Wailuku river, but they have certain valuable rights of water as an appurtenance to the land conveyed to them, and nothing more. They cannot claim any rights except what they have acquired by their deeds and leases, and the defendant is in the same category. Both are limited in their rights of water, and there is not the slightest ground for declaring either as lords paramount; as much reason, as a matter of principle, in the one case as the other. The difference consists merely in the far greater possessions of the complainants.

The next material question is that of a diversion of the water by the defendant to the injury of the mill and premises of the complainants. The title of the land on which the complainants' mill is situated is derived from an award of the Land Commissioners to William Lunalilo, and by him leased to them. As alleged, there was formerly a sugar mill at the same place on which the mill is now situated, and the same was erected and used by order of Kamehameha III. That in consequence of the extension and diversion of the water flowing through the Kamaauwai from the Wailuku river, the complainants have been deprived of their usual flow of water, so that their works have been obliged to stop, and have been otherwise injured in their usual business of sugar culture and manufacture.

The Court have already declared that the complainants are entitled to the same flow of water in the water course to the Wailuku Plantation Mill as has run there from time immemorial; but after a very careful examination of the evidence, I am of opinion that whatever deficiency there may be, in comparison to former times, it is accounted for by the fact of a diversion of water above, by the Kalaniauwai, of far larger quantity than ever flowed there before. Some of the witnesses testify that there are two or three times as much as formerly, and that it waters some four hundred acres of cane of complainants. It may be well to remark here that the complainants commenced planting in 1863. It will not be seriously contended by the complainants that they had a right to lessen, by the Kalaniauwai, the quantity of water in the water courses below, and if they did, that they could claim damages from those interested in

the Kamaauwai, because they secured their usual flow. This quantity they had a right to. It is very clear from the evidence that had there been the same flow of water in the Wailuku, below the Kalaniauwai, that there was prior to its enlargement, that the complainants would have had no occasion to complain of the want of the usual flow of water in their mill water course. This is a complete and satisfactory account of the deficiency of water, but, as it was caused by themselves, they cannot with propriety complain of their neighbors, who have rights of water in the Kamaauwai.

From the general current of the evidence, it appears to me most manifest that the injury which the complainants have received, from want of the usual flow of water to their mill, has arisen from their own acts. They have diverted a large quantity of water by the Kalaniauwai, which was accustomed to flow in the Wailuku river, and which supplied the Kamaauwai and the mill water course. There is nothing in the titles which give to complainants any pre-eminent rights, and they are not justified by the evidence.

My opinion is that the Kamaauwai, the Kalaniauwai and the Wailuku Mill water courses are each entitled to the quantity of water which has usually flowed therein, and that the owners of neither can rightly divert water from the other. Their rights are based upon grants and immemorial usage. No riparian proprietor can lessen these rights. The owners of the lands watered by the Kamaauwai have no right to increase the flow, and the weight of evidence is that they have not, and that the quantity which now flows is in conformity to the ancient usage, and that it does not exceed it. It is in evidence that the amount of water varies very much in the Wailuku river. It is subject to freshets. The head of the Kamaauwai is usually washed away in the water, and the bed of the river is lowered, which renders it necessary to build up a wall so that the water can flow into it. All the inhabitants interested in lands watered by it have, for many years, united for this purpose.

The complainants further allege that the defendant has diverted and extended a lateral water course of the Wailuku river

and caused the water to flow on to kula lands, which were not entitled to water either by grant or permission of the konohiki or by the usage and custom of the kingdom, and that, in consequence of this extension and diversion of the water flowing through the Kamaauwai from the Wailuku river, the complainants have been deprived of their user and that they have been damaged in consequence of the diversion. It is contended by the complainants that as the defendant has the right only to the use of the water of the Kamaauwai ditch for the watering of twelve acres of kalo land, the extension of the ditch on kula land and a diversion of the water from the kalo patches to cane was illegal, because it was originally appropriated for this kalo land and always used as such, and the diversion has injured their lands in Kalua. It is further contended that it would be difficult, if not impossible, to admeasure the quantity of water so that the same amount would be conveyed on the kula land that has run on the kalo. The Court regard this as an illiberal construction of the prescriptive right and one which would do infinite mischief.

In the deeds introduced by the parties, it is not set forth for what purpose the water to which the lands were entitled by prescription should be used. It is very well known, however, that originally the water was wanted mainly for the cultivation of kalo and more recently for cane. If land has a water right, it will not be contended that the water shall be used forever for the same crop, be it kalo or cane. It may be used for any purpose which the owner may deem for his interest, always taking care that any change does not affect injuriously the rights of others.

If the persons whose lands and mills are watered by the Kamaauwai have not taken any more water than what they have always enjoyed, the complainants have no cause of complaint. As Chief Justice Shaw says in the case of *Elliot vs. Fitchburg R. R.*, 10 Cush., 195, "If the use is lawful and beneficial, it must be deemed reasonable and not an infringement of the rights of the plaintiffs, if it did no actual or perceptible damage to them." Various parties interested in the Kamaauwai have hitherto

mutually agreed upon the diversion of water, and for a period the complainants participated with them. When there are various interests in the same flow of water, it is desirable for the parties to agree upon a suitable mode and arrangement to regulate and adjust the same, but if they are unable to agree, an admeasurement may be made by order of Court. This is by no means a new problem. There is no evidence that the lands of defendant, adjacent to his kalo lands; have any prescriptive right to water, and although it is in evidence that Kaluapuhi was purchased as cane land, still there is no right of water conveyed. The Court is of opinion, however, that the defendant had the right to use the water of his kalo land on other lands, if in the transfer or passage of water over his own land no injury was done to others. He is limited to the same quantity of water to which he was entitled on his kalo land by immemorial usage.

When a party has the right of water, he can use it for any purpose, although different from the original use, and in a different place, if the change does not effect injuriously the rights of others. Angel, in his valuable treatise on water courses, has given the law and cited the authorities which sustain it on these points. In the case of *Hall vs. Swift*, 6 Scott, 167, where the plaintiff had a right to water flowing from the defendant's land, across a lane to his own land, and it appeared that formerly the stream meandered down a lane before it flowed on to the plaintiff's land, and that in the year 1835 the plaintiff, in order to render its enjoyment more commodious to himself, a little varied the course by making a straight cut direct from the opening under defendant's hedge, across the lane to his own premises, and this it was contended negatived the right claimed ; Chief Justice Tindal, in delivering his opinion, said: "If such an objection as this were allowed to prevail, any right, however ancient, might be lost by the most minute alteration; the making straight a crooked bit of footpath would have this result. No authority has been cited, nor am I aware of any principle of law or common sense, upon which such an argument could base itself."

"In this country" (the United States), says Angel in his valu- able Treatise on Water Courses, "the doctrine is well settled, that where a right has been acquired by virtue of twenty years enjoyment, to use a certain quantity of water, a change in the mode and objects of use is justifiable; and here as in England the only restriction is, that the alterations made from time to time shall not be injurious to those whose interests are involved." *Strickler vs. Todd*, 10 S. & Rawle, 63; *Blanchard vs. Baker*, 8 Greenleaf, 253.

"Where a right exists to use a certain quantity of water for propelling machinery, a change may be made not only in the mode and objects of the use but in the place of using it, if the quantity of water used is not increased, and the change is not to the prejudice of others. Thus a party had for more than twenty years used a certain quantity of water at a particular dam: it was held he might open his gates and draw that quan- tity without using it there, in order to use it at other works be- low on the same stream. And the owner of the mill may even draw a larger quantity of water through his gates than he had been accustomed to use, if he has lawfully provided the surplus, for his own use, by means of a *reservoir* above, and causes no injury thereby to the owner of another mill situated upon the same dam, or to other persons having rights in the stream." *Whittier vs. Cocheco Manufacturing Company*, 9 N. H., 544; *Bracegirdle vs. Peacock*, 10 Jur., 9.

In the English Court of Exchequer an action was instituted for the diversion of water, the plaintiff alleging in his declara- tion a reversionary interest in three closes of land, to wit, three ponds filled with water, one pond being on each of said closes, and a right to the flow of water into such closes for supplying the said ponds with water. The defendant traversed the right. It appeared in evidence that the plaintiff had enjoyed an im- memorial right to the flow of this water into the ancient pond in one of his closes, but that when thirty years ago he made a new pond in each of the three closes, and turned the water so as to supply them, he thenceforth disused the old pond. Park, B., said: "The use of the old pond was discontinued only because

the plaintiff obtained the same or greater advantage from the use of the three new ones. He did not thereby abandon his right, he only exercised it in a different spot. The right alleged is a right to have the uninterrupted flow of a certain surplus water into a pond, and that right is equally proved, whether it be by prescription or grant. The declaration means no more than this. The plaintiff has the right to the overflow of water either in one pond or three ponds." *Hall vs. Oldroyd*, 14 M. & W., 789.

In the case of *Saunders vs. Newman*, 1 B. & Ald., 258, the claim in the declaration was for a mill generally. It was held that the right to the discharge of the water was not lost by an alteration in the dimensions of the water-wheel. "The owner," said Mr. Justice Abbott in that case, "is not barred to use the water in the same precise manner, or apply it to the same mill; if he were that would stop all improvement in machinery." The same principle applies with equal force to improvement in agriculture. "All that the law requires," says Chancellor Kent, "is that the mode or manner of using the water should not be materially varied to the prejudice of other owners; and the proprietor is not barred to use the water in the precise manner, or to apply it to the same mill, for such a construction of the rule would stop all improvement in machinery. He is only not to abuse the enjoyment to the prejudice of his neighbors." See Kent's Com., 576.

It is further contended by the complainants that their lands, situated in Kalua, opposite and across the road from the twelve acres of kalo land of defendant, have been injured by the diversion of water, as formerly the surplus passed from the kalo patches into a ditch bordering on the road, and thence flowed across on their lands, and had done so from time immemorial. It appears in evidence that the Kalua lands were supplied with water from a branch of the Kamaauwai, and that the original design of its extension was merely for the purpose of watering the twelve acres of kalo land. The question is whether it was such a use as would give a prescriptive right. It is unlike the case of adjacent proprietors of kalo lands, when water is sup-

plied from one kalo patch to another. In this case there was no such distinction. It is more like the cases that have been cited in reference to the water flow from mines, where a use for twenty years affords no presumption of a grant of the rights of water in perpetuity. It is merely a right to use the water as long as it continues to flow.

And the defendant contends that he is under no legal obligation to keep this land forever in kalo, to supply a drainage to the lands of complainants. It is entirely unlike the use of a viaduct laid out by the konohiki, to accommodate several lands, or a series of kalo patches, and the flow from one to another. In the case of *Wheatley & Baugh*, 25 Penn., Chief Justice Lewis says, that "to entitle a stream to the consideration of the law, it is certainly necessary that it be a water course, in the proper sense of that term." Washburne says in his very valuable work on Easements and Servitudes, 378, that "the law has never gone so far as to recognize in one man a right to convert another man's farm to his own use for the purpose of a filter."          ·

A man may drain his swamp, although by so doing he may prevent the water which was accustomed to collect there from penetrating the earth, and thereby finding its way into a stream which flows to an existing mill, and thus diminish the quantity which was usually supplied thereby.

So if the water of a mill is accustomed to overflow and spread itself upon adjacent lands, without forming any definite channel, the owner may stop such overflow, although he thereby prevents its draining into a ditch through which it finds its way into a small stream, and in that way injuriously affects the operation of a mill thereon ; 2 Washburn on Real Property. When a tract of land attached to an academy is purposely left unenclosed, and an owner of adjacent land passing over such tract for more than twenty years, such passing is regarded as permissive and not adverse; so that he acquires no right of way, unless he does some act indicating a use under a claim of right. An adverse right to an easement cannot grow out of a mere permissive enjoyment for any length of time.

Take, for example, the case of a miner who uses a steam engine to drain his mine, and the water pumped up flows on the land of an adjacent proprietor, and is then used for agricultural purposes, it will not be contended that this is a reason from which a grant would be presumed, and if so, the owner of the mine would be obliged to keep his steam engine in operation to supply the land with water in perpetuity. Suppose, for example, that water runs from the spout of the eaves of a row of houses and flows into an adjoining yard, and is then used for domestic purposes, it would not be contended that the owner of the house had incurred an obligation that his structures should always be such as to provide for this purpose. An adverse right cannot arise from a permissive enjoyment. There is no pretense that this water was claimed as a matter of right. It was merely the reception of water from the drainage, and it certainly can create no right to oblige the defendant and his grantees forever to use the land for the exclusive purpose of kalo.

The counsel on both sides have made frequent reference to the rights of riparian proprietors at common law. The principles which govern them have very little practical application to this case. A riparian proprietor has a qualified property in the soil to the thread of the stream, with all the privileges annexed thereto by law. He has a right to divert the water for irrigation, but it can only be done so as not to injure other proprietors. It is often a nice question where the right ends and the wrong begins in the scale of admeasurement of such diversion. If it is made only of such water as the complaining party could not have used for a beneficial purpose, and made in a reasonable manner, and for a proper purpose, an action will not lie. If the rights of these parties were limited to those of riparian proprietors, they would be much less than they are. *In Tyler vs. Wilkinson*, 4 Mason, 397, Mr. Justice Story says, "that the riparian proprietors have annexed to their lands the general flow of the river, so far as it has not been acquired by some prior and legally operative appropriation." In this case the right of the parties consist in the water courses, diverted

from the Wailuku river, and they are entitled to all the rights which they have enjoyed from time immemorial.

The counsel for defendant contends that the right of irrigation is a natural right. It is an incident to an estate if a stream of water runs through it. This principle does not apply to lands situated as the defendant's are. His claim is based exclusively on an artificial water course which was included in his grant as an appurtenance. The counsel would not seriously contend that natural rights, even in an arid country, would authorize a man to trespass on the property of others, in order to procure water for his own lands. It is very true that irrigation early claimed the attention of the cultivators of the soil on these islands, not only from the fact of its being a necessity on most of the land, but from the fact that the vegetable from which the national food of the country was furnished required flowing water, and hence in all portions of these islands the traveler will see evidence of ancient water courses, as well as those now in use. The water courses on this Ahupuaa have existed from time immemorial, and were doubtless made by the order of some ancient King, and when the late King conveyed these lands to the proprietors, the rights of the water courses, in their full enjoyment, was included as an appurtenance. While the King owned this Ahupuaa, he had a right to apply the water to what land he pleased, but after the water courses were made, more especially after being in use from time immemorial, his conveyance of the land would include them, the same as his conveyance of land bordering on the Wailuku river will include the rights of water in said river, which had not been before granted. It is very evident that each party has rights to the water courses running through their lands, the title to which they have shown.

The kula land of the defendant has no riparian rights, and it does not appear by the evidence that it has any prescriptive rights of irrigation by the Kamaauwai. The counsel has made the allegation that this land has a natural right to irrigation, and that all lands have it in arid countries. There is no doubt that the law which regulates the uss of water would be somewhat different in tropical countries from that in a northern latitude.

In some portions of the United States advantages are given to mills over lands, so that a mill owner can build a dam, and overflow the land of another person, and thereby convert the land to his own use, and he is only responsible in damages. It is true that in this Kingdom these rights of irrigation would not probably be infringed upon in this way. The principle cannot be carried to the extent contended for by the counsel, for the reason that it would be using water which is the property of others, as well as passing it over the lands of others, which would be a trespass.

In a final adjustment between these parties, they may regard certain principles as settled, that as they hold from the same grantors, and with similar privileges and appurtenances, and neither having exceptional rights, each is entitled to all the rights which his deeds give him, no more and no less, at least so far as their rights conflict. Kalaniauwai, Kamaauwai and the mill water course are entitled to all the water which have flowed in them from time immemorial. And if at any time there is a drought, and the water is diminished in the Wailuku river, these auwais will lose pro rata. The proprietors of the Kalaniauwai have no right to divert the water of the river so that the Kamaauwai and the mill water course will not have their usual flow. And it is very clear that had there been the same flow of water in the river as there was prior to the cultivation of land on the north side by the complainants, and the enlargement of the Kalaniauwai, there would have been no occasion to lessen the water in the mill water course. It is in evidence, satisfactory to my own mind, that those interested in the Kamaauwai have diverted a disproportionate quantity of water, as it flowed in the Wailuku river, from the mill water course. But the evidence is conclusive that the complainants have diverted a very large quantity of water into the Kalaniauwai from the river beyond its prescriptive rights, which, prior to the cultivation of their plantation, supplied the Kamaauwai and the mill water course of complainants. And as they have caused the deficiency in the river, they have no reason to complain of the diversion as it is not greater than the Kamaauwai is entitled to as a prescriptive right. The weight of

evidence is that about an equal quantity of water flowed formerly in the Kalaniauwai and Kamaauwai, and that far more in the latter than formerly, but a great deal more has flowed since the period referred to in the Kalaniauwai.

The original purpose of these water courses was to supply kalo patches, and the intention of the konohiki must have been to give all the kalo lands on this Ahupuaa rights of water at all times when needed. Kalaniauwai has no priority of supply over Kamaauwai and the mill water course, because it was situated above them on the stream, and neither has Kamaauwai superior rights to the mill water course for the same reason ; but all are entitled to their usual flow. The weight of evidence is that no more water flowed in the Kamaauwai at the time complained of than formerly. Witnesses have testified to this fact having existed for more than twenty years ; therefore complainants have not sustained the allegations of an illegal diversion. The defendant has not sustained his answer on this, that his lands, called Kaluapuhi and Kekipi, were entitled to water, either by grant or prescription ; but I am of opinion that he had a right to transfer the water from his kalo lands adjacent to these lands, if by doing so he did no injury to other persons. The complainants have not sustained the allegation that it has done so to them. It is only changing the place of using the water, and they had no right to complain if it worked no injury to them. The defendant is not obliged to keep the water on his kalo that it might filter through these patches and flow over the road on to the land of complainants below.

The change in the place of the water course on his own land is justified on the same principles. These changes of the ditches, or of the water, depend upon the question whether injury is inflicted on others. The complainants have not sustained the allegation of injury.

These are my views of the rights of the parties. To admeasure the quantity of water to which the Kamaauwai is entitled is not a difficult matter, and for many years, at least, it is very evident that those interested have very amicably adjusted the same. These parties, who are very intelligent men, can easily

43

do it, and I trust they will in a friendly manner. The principles which the Court have now declared, are, in many respects, as important to the complainants as to the defendants. A portion of their lands was formerly cultivated with kalo, which is now planted with cane, and very likely some of the water which was formerly devoted to kalo, if not already transferred by the extension of the ditches, so that it irrigates cane, they may wish hereafter to do so. A slight change in the course of the ditch for mill purposes, or any other beneficial purpose, which causes no injury to another, is as likely to commode one as the other. The opinion of the Court must rest upon general principles of law and equity, and any other opinion upon the questions raised in this case, as it appears to me, would be as much against the common judgment of the practical planter, as against these principles.

Injunctions are not awarded by Courts of Equity, for the infringement of even doubtful rights, until they have been established at law, and therefore I cannot certainly in this case issue an injunction as prayed for. Still as there was evidently on the minds of both parties mistaken ideas of their rights, which were very honestly entertained, and which this investigation will aid, I trust, in correcting, I shall dismiss the application, and each party must pay the costs incurred by the same.

*C. C. Harris, R. H. Stanley, J. C. Farwell* and *J. W. H. Kauwahi,* for petitioners.

*A. F. Judd* and *W. C. Jones,* for respondents.