PALOLO LAND & IMPROVEMENT COMPANY, LIMITED, *v.* WONG QUAI, WONG CHOW, LUM SOW, WONG MUNG, TERRITORY OF HAWAII, ESTATE OF CHARLES LONG, LILIUOKALANI, HAWAIIAN TRAMWAYS CO., LTD., T. H. DAVIES & CO., LTD., W. R. CASTLE, A. F. COOKE, S. K. KANE, KAUHA (k), KALOKI (w), HAUIA (w), W. H. PAIN, KAAUI (w), KAOPULAUOHU (k), KEAKA NAIWI (k), NOA (k), NAHOLOWAA (k), LILIUOKALANI, as lessee of the Territory of Hawaii, J. H. BOYD, as lessee of the Territory of Hawaii, W. E. ROWELL, as lessee of the Estate of Charles Long, LOO CHIT SAM, as lessee of. Palolo Land & Improvement Co., Ltd., of Liluokalani, of

W. R. Castle, and of Hauia (w), WONG TUCK, as lessee of Palolo Land & Improvement Co., Ltd., of Haui (w), and of Keaka Naiwi, WONG YOU KEE CO., as lessee of Estate of Charles Long, of Kaloki (w), of Liliuokalani, and the Territory of Hawaii, S. K. Kane, as lessee of Kaaui (w), WING OIE, as lessee of S. K. Kane, KUM CHING, as lessee of Kaopulauohu, WONG LUNG, as lessee of Noa (k), KAUHA, as lessee of Estate of K. Kanoa, WONG OIE AH YORK, as lessee of Estate of Charles Long, KUM LUI, as lessee of Palolo Land & Improvement Co., Ltd., OUI, as lessee of Palolo Land & Improvement Co., Ltd., and NAEOLE.

APPEAL FROM COMMISSIONER OF PRIVATE WAYS AND WATER RIGHTS, HONOLULU.

SUBMITTED MAY 29, 1903.          DECIDED APRIL 16, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

A prescriptive right to water for a certain tract of kula land held not to exist, as the use relied upon is shown by the evidence not to have been hostile or continuous for the statutory period.

Water may be diverted by the owner from land entitled thereto to other land of his, provided no injury is thereby done to others. But where the overflow from certain taro land from which such diversion is sought to be made belongs by prescription to lower lands adjoining, only as much water may be diverted as is consumed on the servient land itself in the cultivation of taro.

Certain of the water rights of Palolo Valley defined.

OPINION OF THE COURT BY PERRY, J.

This is a proceeding brought in the early part of 1902 before the Commissioner for the settlement of water rights in Palolo Valley, Oahu. It involves the rights of all the wet lands in that valley. The hearing before the Commissioner occupied parts of

twenty-five days, thirty-seven witnesses being examined, the transcript of whose testimony covers 828 typewritten pages. In addition to this, the notes of the evidence taken in three former suits concerning some of these same rights were introduced and admitted as evidence in this case. The Commissioner filed her decision on November 20, 1902, and a supplement thereto on December 6, 1902. From that decision certain of the defendants appealed to this court.

The Commissioner seems to have met with much difficulty in ascertaining what the ancient rights were and how far they had been modified by adverse user in later years and in finding a method for the enforcement of those rights and finally concluded that "the matter is left entirely in the hands of the Commissioner to make a distribution in as equitable a manner as possible, with a due regard to undoubted ancient rights wherever proved, and also with a view of protecting capital invested in industries tending to the welfare and prosperity of the community." If by this was meant that the distribution was to be in conformity with vested rights and otherwise just and equitable, the rule laid down was correct. That is what the statute (C.L., Sec. 1823) and justice require. If anything less than that was intended, the theory of the decision was incorrect. In either event, it becomes our duty to determine whether the specific adjudications made by the Commissioner should, upon the law and the evidence, be sustained, reversed or modified.

Those adjudications are as follows:

"First. I adjudge one half of the water at the present Dam 1 (called Mahoe on the map) to Wailupe (auwai) the present continuation of said Wailupe to Dam 1 to remain.

"Dam 4 to be discontinued, but the auwai formerly leading from said Dam 4 to be kept open immediately below position of dam, to take whatever seepage should drain from waters of Mahoe and Kolihana kuleanas that would flow naturally that way, and carry the same to junction with present Wailupe auwai. This auwai though must not take any water directly from the stream.

"Wailupe ditch to irrigate first Mahoe, Kolihana and two-

acre piece marked F on the map, then such of lower Kalaepo-haku as is now cultivated, Kahuaina and Keaweolono, then Ka-ululoa apana two, Kepuhi, Wailupe and its kuleanas, Kaauwae-loa 1 and 2, and lastly Kapahulu and its kuleanas formerly en-titled to water.

"At the boundary stone wall between Kaauwaeloa and Kapa-hulu water should be so divided that only what is necessary to irrigate the three acres of Wong You Kee Co. be allowed to run to it, the rest of the residue of Wailupe water, say one half, to be turned on to Kapahulu to be impartially divided between lois formerly entitled to it.

"Kapahulu is to have the right to dig a trench below the three acre land of Wong You Kee Co. and take whatever surplus water or drainage is found thereon to Kapahulu-loko-pa or land that formerly had a water right.

"Dam 2 known as Kahamano to take one half of water found in Pukele stream at that point. The water of this auwai irri-gates mostly land of Kaulu, in Waiomao and kuleanas therein, surplus and drainage flowing naturally into Waiomao stream.

"Dam 3 for Auwai-o-Humu to take one half the water of Pu-kele stream at that point which should be increased by seepage from Mahoe kuleana and the upper stretch of Kahamanoauwai. The waters of Humu are to be used to irrigate all kuleanas and lands having water rights in it above the reservoir, and as the most of the lands entitled to such water belong to the Palolo Land and Improvement Co. they may continue to take surplus water into said reservoir, providing the lands above get all the water necessary for the healthy growth of their crops.

"Dam 4 to be done away with.

"Dam 5 for auwai of Piilani to take one half the water of stream at dam.

"Dam 6 for Auwai-o-Kapuhi to take one half the water of stream at that point. Water of said auwai to irrigate land of Kukeanuenue and lower Kepuhi and Wailupe. Flume crossing stream to be taken away.

"Dam 7 to be rebuilt and water of same taken to lower part of Kukeanuenue, lower Kepuhi and Wailupe. To take one half water of stream at dam.

"Dams of Kukekia and Hapuna to be rebuilt and to take one half water of stream at each dam. Water is for lower Kaauwae-loa and Kapahulu.

"Laauli, Dam 9, to take all the balance of water in the stream.

for Kapahulu, as there is no cultivation below Kapahulu-loko-Pa.

"On Waiomao stream, Dams A and B, also kuleana Opunui, apana two, may take all the water they want as they must flow back into stream afterwards, there being no other outlet.

"Dam C for auwai of Kaulu irrigating land of Kaulu in Waiomao to take one half of water of stream at dam. All drainage from land watered by this auwai falling back into stream above Dam D, Kaneohuku.

"Dam D, Kaneohuku, irrigating Kekio and its kuleanas, to take two thirds of the water of Waiomao stream at that point.

"Dam 8 for Keaunaia auwai, irrigating land of Keaunaia, a part of Kekio, and kuleanas in Kekio bordering on main stream to be moved further up from present location onto the Waiomao stream at a point just before its junction with Pukele stream and where it cannot take up water flowing through Pukele stream. Dam 8 to take up balance of water in Waiomao stream with all seepage and drainage falling naturally into that stream above junction with Pukele.

"Waters of Kaneohuku and Keaunaia auwais to be used on ancient cultivated land of Kekio and its kuleanas with water rights first, and only surplus water can be used on the newly cultivated land called Pukakohekohe, the twenty-four acres former kula land.

"All kuleanas to have all needed water, and drainage from them must be into adjoining land, or back into stream.

"Water of seepage and springs in Mahoe and Kolihana kuleanas adjudged to Wailupe ditch in second paragraph of first section is hereby more definitely defined as all water flowing or seeping from all the makai side of a large bank running from the present Waialae corner of the large Mahoe loi (and now enclosed by a barb wire fence) to the Pukele stream. Said embankment meeting at a point a little above or mauka of Humu dam.

"This embankment is also the old trail leading from the mauka Honolulu side of Palolo Valley to the Waiomao side of Pukele stream.

"Parties interested are requested to take immediate steps for the proper identification and establishing of permanent marks or monuments defining boundaries of seepage waters referred to in above paragraph, to the end that as many interested parties

as possible may see and know of it now while Commissioner is alive and here to appeal to.

"Dam D, Kaneohuku, may take all the water of Waiomao stream until such time as parties interested may build the Keaunaia dam on Waiomao stream above junction with Pukele stream. Kuleanas entitled to water to draw from Dam D in the meantime.

"This decision is final on all issues raised, but nevertheless any of the defendants herein owning kuleanas may apply on or before the first of June, 1903, to have a definite sub-apportionment of water awarded to him or her from the auwai water to his or her kuleana.

"Any rebuilding of dams shall be done by all parties interested, expenses to be borne in proportion to the water awarded or claimed.

"Should stone and cement dams be wanted to be built next summer such permanent improvements should be borne by land owners proportionally to the amount of water entitled to, except in case of mutual agreement between landlord and tenants."

The wet lands of Palolo obtain their water from two streams, the Pukele on the west and the Waiomao on the east, which come together at a point a little above the middle of the cultivated portion of the valley. In rainy seasons, the two streams perhaps carry about equal quantities of water, but the flow of the Pukele is at other times much greater and is more constant than that of the Waiomao, this being due largely to the fact that certain springs on the Mahoe kuleana, the uppermost taro land on that side of the valley, flow into the Pukele, partly because the water-shed of the latter is larger and partly, perhaps, because the bed of the Waiomao does not retain water as well. In dry seasons, the supply from the Waiomao is very much less than that from the Pukele.

The total area of land now using water is, approximately, 140 acres, of which a tract of 24 acres is claimed not to possess any right to water. Of the remainder about 58 acres lies west of the Pukele, in a long narrow strip. about 29 acres between the two streams and about 29 acres east of the Pukele below its junction with the Waiomao.

Across the two streams, at points approximately indicated

on the map by M. D. Monsarrat marked Exhibit X, are fifteen dams. An important element for determination in this case is as to the proportion of water that may lawfully be diverted from the main stream at each of these dams. Other questions are as to what rights, ancient or prescriptive, the 24-acre piece has and what rights, if any, have accrued by prescription to a certain reservoir built by one Philip Milton, in the upper portion of the valley and between the two streams.

As to the 24-acre piece. For purposes of future identification it may be said that this tract, now cultivated in rice, is situated east of the easterly road running into the valley and makai of the bend of that road passing in front of D. W. Pauahi's residence. There can be no doubt that this tract was until some time in the early eighties rocky, uncultivated kula with no water rights appurtenant to it. In 1882 or 1883, after Milton became the owner of that and other portions of the valley, clearing of the piece from the builders upon it and cultivation in rice commenced. The water for that purpose was originally obtained partly from the surplus diverted at Kaneohuku dam but mainly from the reservoir already referred to and which was built by Milton in or about the year 1884. The reservoir in turn was supplied from Ditch 3 and, to a lesser extent, by overflow from Ditch 2. Such use of the water as was had by the twenty-four acres, was not continuous, not even during all of the time when it was needed. In times of plenty, when the wet lands had all they needed, no complaint, perhaps, was made of the taking by the lower tract; but whenever the use by the 24-acre piece or by the reservoir would, if permitted, result in the other lands having less than they needed, complaints did follow as also an interruption in the use now claimed to have been adverse. Until the institution of these proceedings Milton and his successors in ownership recognized, and their attorney so advised them, that neither the 24-acre piece nor the reservoir had any right to water except by transfer from Kaululoa, a wet land situate mauka of the reservoir and not in cultivation for some years

next succeeding the building of the reservoir, and that they must yield to the complaining natives. In consequence of the objections of the owners above and of the resulting lack of water, for three or four years past water for this piece has been at times obtained by purchase from the Pahoa water works, a source outside of the valley. Not to mention other lesser interruptions, the land remained untilled from 1891 to 1893 or 1894. One Akana, who had taken a lease of the tract in 1890 and who commenced planting during a wet season, abandoned the land and surrendered his lease the following year when he discovered that he had no substantial water rights sufficient to irrigate the tract and for that reason only. Upon all of the evidence, we are satisfied that the use relied upon by the plaintiff, the present owner, lacked the elements of hostility and continuity and find that the tract had no ancient rights to water and has acquired none by prescription. Concerning the transfer to it of water appurtenant to other lands of the plaintiff, we shall speak hereafter.

The reservoir, costing about $8,000, was built by Milton after he had consulted counsel as to his rights in the matter. His attorney advised him, in substance, that his only right was to divert water from his unused land of upper Kaululoa but that even as to that, a different or new use, the consent of the other owners of wet lands in that vicinity would be necessary. Milton at that time held under lease the land of the heirs of one Long, which heirs he did not consult, but obtained the consent of the other owners interested to his taking into the reservoir by night the water from Kaululoa and kuleanas in the vicinity, the other parties to use the water by day. The arrangement, however, seems to have been intended to be of a temporary character only and to have reference merely to water not needed by the other owners. The attorney referred to, a credible witness, who was familiar at the time with all the details of the matters in question, testified that he did not then understand that any of the other owners were by reason of the consent given, whatever it was, surrendering any of their rights to water their own lands

and from the other evidence, which is practically undisputed, it is clear that Milton and Cartwright, his successor in interest who conveyed in 1899 to A. F. Cooke, the grantor of the plaintiff, at all times recognized as superior the rights of the wet lands in the valley whether situated above or below the reservoir. Whenever the lessees of the 24-acre piece, for the use of which alone the reservoir was built and continued in existence, did attempt to use water at times of an insufficient supply so as to result in any of the other lands not having all that they needed, complaint was made and the reservoir and the 24-acre piece yielded until finally for use at such times water from Pahoa was purchased. Upon all of the evidence we are satisfied that the use relied upon by the plaintiff was permissive at its inception and continued permissive until at least the conveyance to the plaintiff's grantor in 1899 and that no prescriptive right to water to which other lands were theretofore entitled has accrued in favor of the reservoir.

To the taking by the reservoir of surplus water, meaning thereby freshet water and water not needed by any of the wet lands elsewhere in the valley, to the extent to which it has been taken in the past in the existing ditches or as overflow from them, no objection is made by the appellants, as they expressly say in their brief. In the absence of a controversy and of a contest and argument, we do not care to express any opinion on the point. It is of some importance, as a precedent at least. The question of the taking of any portion of such surplus greater than that mentioned is, of course, not before us.

As to the diversion of the water of the unused portions of Kaululoa to the reservoir or to the 24-acre piece, the view has been adopted that water may in such cases be diverted provided no injury is thereby done to others. *Peck v. Bailey,* 8 Haw. 658 (1867) and *Lonoaea et al. v. Wailuku Sugar Co. et al.,* 9 Haw. 651 (1895). We think that the plaintiff may lawfully divert the water to which any unused portion of Kaululoa is entitled, but the qualification to the rule, an essential qualification, requires us to say that this does not mean that all the water flow-

ing to or over such portions may be taken but only as much
as would be consumed on the land itself in the cultivation of
taro,—in other words, in the application of this ruling care must
be taken not to divert any more water than can be diverted with-
out causing injury to others. The distinction here sought to be
made is material because, as we find from the evidence, the
waters passing by seepage and overflow to adjoining lands and
subsequently into one or the other of the main streams are, espe-
cially in the dry seasons, a real and an important part of the
supply for such adjoining lands and for other lower lands and
are a part of the supply to which such dominant lands are en-
titled. Just what proportion of the water from such unused
lands the plaintiff may divert, we do not now venture to say,
for there is before us no sufficient evidence for the purpose. The
parties interested may be able to satisfactorily adjust the matter
if a diversion is desired, but if it becomes necessary the Com-
missioner and this court will later determine the point.

Some question seems to have been raised during the taking of
the testimony below as to whether a three-acre piece in the south-
ern portion of Kaauwaeloa and a three-acre piece just west of
the stone wall in Kapahulu are entitled to water. As to the first
of these, the question was disposed of in *Loo Chit Sam et al. v.
Wong Kim,* L. 1699 (5 Haw. 130, 200), where it was held both
by the Commissioner and the Supreme Court on appeal that the
land was ancient taro land and entitled to water. The Commis-
sioner's decision "that all the land now under cultivation by
Wong Kim is entitled to water from the Wailupe ditch" would
seem to cover the second piece also for from the evidence in this
case it appears that that piece was being cultivated by Wong Kim
at the time of that decision. However that may be, and whether
the land was originally taro land or not, it is clear from the
evidence, which is undisputed on the point, that the land has now
acquired a right to water by adverse use for more than ten years
next preceding the institution of these proceedings. Such use
commenced, if not before, very soon after the decision of 1884
just mentioned.

Dams 1, 2, 3 and 4. In October, 1883, one Loo Chit Sam and seven other Chinese composing the firm of Mau Yick Wai Co., Bila, Noa, Ku and Pauahi brought a suit against Wong Kim before the Water Commissioners for the settlement of certain water rights then in controversy between them. Wong Kim was cultivating lands west of the Pukele now cultivated by the appellants under the same lessors and the Mau Yick Wai Co. was cultivating lands east of the Pukele now held by the plaintiff. One of the questions then involved was as to the division of the water of the Pukele at and above Wailupe Dam (No. 4). The commissioners rendered a decision containing eight sub-divisions or orders, but six of these were by the Supreme Court on appeal held to be too vague and indefinite to be of any value as decisions and the case was remitted to the commissioners for determination. The second and third points, conceded by the appellant, Wong Kim, when before the Supreme Court to be correct and by that court affirmed, were as follows:

"2. That the new ditch dug by Wong Kim from the spring in the taro patch on Mahoe's kuleana to the Wailupe ditch be done away with and the overflow from this patch to run into the stream.

"3. Open the head of the Wailupe ditch that has been closed up." The commissioners thereafter further decided as follows:

"1. That the 4 auwais, viz.: that watering Mahoe's patches, Waiomao, Pukele and Wailupe are each entitled to ¼ of the water from the main stream or water-head.

"2. That the overflow from those of Mahoe's patches facing west should flow into Wailupe, that from the rest into the stream." From these adjudications no appeal was noted.

While the decision in that suit would be binding on all who were parties and on their privies, it is not binding on others. Wong Kim alone was made a party defendant and no attempt was made to bind others by service by publication. Yet the decision should be given effect as far as possible, for it was rendered at a time when more kamaaina testimony was available. A serious difficulty, however, presents itself concerning a portion of the decision, and that is, in ascertaining what was intended by the award of one fourth to what the commissioners call the

Pukele Auwai.   The evidence thus far given, whether in the
former cases or in that at bar, discloses no auwai by that name.
Three of those referred to by the commissioners are easily iden-
tified (the Waiomao being that here called the Kahamano), but
the only other one testified to in this case as existing in that
vicinity is the Humu (No. 3), a ditch which, upon all the evi-
dence, is much smaller than the others.   All of the witnesses in
the former case who testified on the subject said, in effect, that
the correct division was $\frac{1}{4}$ each to Mahoe, Kahamano and Wai-
lupe and $\frac{1}{4}$ to go down the main stream, the Pukele.   A diagram
filed as an exhibit in that case is entirely silent as to the exist-
ence of the Humu.   The commissioners in their decision say
that "the evidence is perfectly clear and requires no comment."
All this would seem to indicate that by the "Pukele" the com-
missioners meant the stream and not the ditch.   On the other
hand, pointing the other way, is the fact that the commissioners
doubtless knew the difference between an "auwai" and a "main
stream" and the fact that all of the witnesses on the subject (in
the present case) speak of the Humu, small though it may be,
as an old ditch with some kuleanas and other lands dependent
upon it.   We find no reason in the evidence for supposing or
finding that the Humu sprang into existence after the decision
of 1884.

Upon all of the evidence, bearing in mind the relative areas
to be watered and the other circumstances, we think that the
rights of the parties will be best preserved and justice effected
by awarding to the Humu one eighth of the quantity of water in
the Pukele stream just before it reaches Mahoe dam, all the sur-
plus needed elsewhere in the valley by any of the wet lands to
pass either by way of seepage or as overflow, from the lands wa-
tered by the Humu either directly or indirectly into the Pukele
(and partly into the Waiomao stream if the natural lay of the
land so requires) or to lower lands entitled to water, but not to
be diverted by the reservoir except as already provided above.
Thus will be left to the main stream and dams below Wailupe
dam the remaining one eighth and all seepage and overflow re-

turned to the Pukele above Wailupe Dam and the seepage and
overflow entering the Pukele above Piilani from Kaululoa and
upper kuleanas. The seepage and overflow from Kahamano to
these lands just mentioned must take the same course. The great
preponderance, if not all, of the kamaaina testimony in this
and in previous cases shows that the award made in 1884 of ¼
each to the Mahoe, Kahamano and Wailupe auwais is correct
and should be sustained together with the accompanying orders
that the new ditch in the Mahoe kuleana be closed and that the
head of Wailupe ditch be opened, and also that relating to the
overflow from Mahoe's patches, whether, we now add, the latter
be cultivated or not cultivated.

Why the former order that the new ditch just referred to be
closed and that Wailupe be opened has not been complied with
up to the present time, does not appear; but no contention is
made by the appellants that any prescriptive rights have accrued
from such disregard of the order. The appellants apparently
regard it as immaterial to themselves whether the Wailupe ditch
gets all its water at Mahoe Dam or partly there and partly at
Wailupe Dam.

The contention of the appellants that, if the new ditch be
ordered closed, they should be permitted to cement the ditch
from Dam No. 1 so as to carry off all water not strictly the
product of the alleged "springs" in Mahoe kuleana cannot be
upheld. It is inconsistent with the rule so strongly and right-
fully contended for by them, as to all other parts of the valley,
that all surplus, whether appearing as seepage or as overflow,
should be permitted to pass down for the benefit of lower lands.

Dams 5, 6, 7, 8, Kukekia and Hapuna are each entitled, we
have no hesitation in holding, to take ½ of the water in the
stream at the points where they are respectively located, Keau-
naia (No. 8), as well as each of the others, to be continued in
the place where it now stands. Laauli (No. 9), there being no
other dam below it, may take of the water remaining in the
stream at that point as much as the ancient taro lands watered

by that dam and ditch need, the overflow, if any, to be returned into the stream.

The Commissioner was correct in ordering the discontinuance of the use of a flume across the Pukele between Dams 6 and 7 and leading water from Kapuhi ditch at a point in the lele of Kaululoa to the lands on the eastern side of the Pukele. No right, either ancient or prescriptive, exists for the maintenance of a flume at that point.

The decision of the Commissioner as to Dams A and B, on the Waiomao, is affirmed. Kaulu dam (C), on the same stream is entitled to $\frac{1}{2}$ of the water in the stream at that point but whether the seepage and surplus from the lands directly watered by it should return into the Waiomao above Kaneohuku Dam (D), as ordered by the Commissioner, or should pass to adjacent lands and thence partly to each of the two streams, as contended by the appellant, is not clear. The contention is that in a former suit (*Ing Choy v. Ung Sing Co.*, L. 3089, 8 Haw. 498), it was held that the lower lands adjacent were entitled to such seepage and overflow, but from the record in the case referred to, as it stands, it is impossible to identify the lands of Ing Choy in whose favor the decision was rendered and the evidence in this case concerning the original rights is not satisfactory. As to this point the commissioner's decision is unsupported by the evidence and is set aside. No ruling upon it is made by us.

Kaneohuku Dam (D) has been the most fruitful source of controversy in the valley, but, although it has been directly or indirectly involved in at least two proceedings before the commissioners (*Ahoi v. Loo Chit Sam*, 1882, L. 1150, and *Loo Chit Sam et al. v. Wong Kim*, 1884, L. 1699), no definite adjudication has yet been made as to the proportion of water which it is entitled to take from the stream. The order of the commissioners in L. 1699, points 6, 7 and 8, has been already held by the Supreme Court to be ineffective as a decision because too vague and upon the case being remanded no further attempt was made to determine the point. Paragraphs 6, 7 and 8 were as follows: "(6) that a part of the dam in the auwai from Waiomao

be taken away so as to allow the proper amount of water (according to the ancient division) to come through the auwai to the Pukele stream; (7) that the Keaunaia dam be lowered or opened so as to allow the upper proportion of water according to the ancient division to pass down the stream to Kukekia dam; (8) that the water be taken out at the Kukekia dam to water patches in Kaauwaeloa adjoining the stream and patches or land below on the northwest side of stream. The division of the water to be according to the ancient water days." These are of value, however, as tending to show the conclusion of the commissioners, reached after hearing more kamaaina testimony than is now directly available, that Kaneohuku, as also Keaunaia, was entitled to a part only of the water. There is, further, a decision in *Ahoi v. Loo Chit Sam,* to the effect that Kapahulu is entitled to 48 hours each week and that Keaunaia "be lowered evenly right across at least one foot", the intention evidently being, as an inspection of the whole record will show, to hold that Kapahulu is entitled for that time to all the water at Dam 9 including water from Waiomao. The present plaintiff claims all of the water of the Waiomao at Kaneohuku and this was practically granted to it by the Commissioner in awarding to that dam ⅔ of the water at that point, in ordering Keaunaia moved to a point on the Waiomao above the junction with the Pukele and in awarding to that dam as so placed *all* of the water in the stream. We are satisfied upon the evidence that each of the dams below the junction is entitled to water from the Waiomao as well as from the Pukele. This ancient rule is a just one, for thus the lands on each side of the stream below the junction receive a portion of the lesser and more variable flow from the Waiomao and a portion of the greater and more constant flow from the Pukele. Moreover, a part of the water in the Waiomao at and below Kaneohuku originally comes, as above shown, from the Pukele, finding its way across through the Kahamano, the Humu and the Piilani auwais. The rule elsewhere in the valley, except at the headwaters, is that each dam takes one half. We know of no reason why this should not apply to Kaneohuku and

the preponderance of the evidence is to the effect that that is the ancient division. The lands on the east obtain at Keaunaia another one half of the Pukele water at that point.

The Commissioner's order concerning the allowance to the three-acre piece in Kapahulu outside of the stone wall and the surplus therefrom we find no reason for disturbing.

Throughout the valley all seepage and overflow needed on wet lands below should be permitted to flow on the adjoining wet lands or into one or the other of the streams, directly or indirectly.

Except as in this opinion is otherwise directed, the Commissioner's decision as to what lands are to be watered by each auwai is affirmed.

On some lesser points involved in the controversy no decision was rendered by the Commissioner, as, for instance, as to the division of the water from each auwai among the lands dependent upon it. The Commissioner reserved ruling upon these matters until the next dry season when this portion of the work can be more successfully done.

A decree will be entered in conformity with the foregoing, without prejudice as to any of the matters left undetermined. Costs to date to be paid, one third by the plaintiff, one third by Loo Chit Sam, one sixth by the Wong You Kee Company and one sixth by the lessors of the latter other than kuleana holders and the Territory of Hawaii.

*T. McCants Stewart* and *L. Andrews* for petitioner.

*Kinney, McClanahan & Bigelow* and *C. S. Dole* for respondents appellant.