IN THE MATTER OF JOHN ROSS *et al.* Petition to Vacate Election of Nobles for Oahu.

APPEAL FROM BICKERTON, J.

HEARING, APRIL 8, 1892. DECISION, APRIL 13, 1892.

JUDD, C.J., BICKERTON AND DOLE, JJ.

The Election Law of 1890 does not prescribe in what language, Hawaiian or English, the ballots shall be printed.

Held, the printing of the ballots in English was a compliance with the law, as would also be the printing of them in Hawaiian, or in both said languages.

OPINION OF THE COURT, BY JUDD, C.J.

A petition in due form to annul the election of Nobles for the Division of Oahu was filed and presented, and all the requisites of the statute regarding notice, etc., complied with. It came on for hearing before Mr. Justice Bickerton, who filed, on the 30th of March, a full statement of his findings of law and fact, dismissing the petition. From this the petitioners perfected an

appeal to the Court in Banco. At the hearing before us, the petitioners, through their counsel, Messrs. A. S. Hartwell and C. W. Ashford, stated that they accepted all the findings of fact by the Trial Justice raised by the petition, except that set out in the sixth paragraph, wherein it is alleged that the Minister of the Interior refused and neglected to insert in the printed ballots the Hawaiian equivalent of the name of the candidate Henry Waterhouse. We therefore affirm the findings of fact not excepted to, and will consider the contested matter later on.

The principal ground advanced by the petitioners upon which the election is sought to be annulled is that the ballots prepared by the Minister of the Interior for use on the occasion were illegal, in that they did not contain any of the words "Koho ana no ka makahiki 1892," nor any Hawaiian words specifying the name of the office, or the name of the division for Nobles, or the term of the office, nor, in the cases of the special elections, any words in the Hawaiian language specifying the unexpired terms of the office, nor the words "Koho Balota Kuikawa," but that all of said Hawaiian words were omitted therefrom, as appears by a specimen of said ballots appended to and made a part of the petition. More succinctly, the ballot is averred to be illegal because its descriptive parts were not printed in Hawaiian.

The question is an important one, having a wider effect than on the present case. We find nothing in the Constitution or the statute laws requiring that acts passed by the Legislature should be in both Hawaiian and English, though the rules of the Legislature have undoubtedly required that this should be done.

The only statute, that we are aware of, that bears upon this matter is the early one, that where a radical and irreconcilable difference is found to exist between the English and Hawaiian versions of any part of the Civil Code, the English version shall be held binding. Civil Code of 1859, Section 1493. This was enlarged by the Act of 1864, so that now if there is found to exist a radical and irreconcilable difference between the English and Hawaiian versions of any of the laws of the Kingdom, which have been or may hereafter be enacted, the English version

shall be held binding. This would certainly imply that the statute laws of this Kingdom have been and will continue to be passed and promulgated in two versions, English and Hawaiian. But, though this may be the case, the two versions constitute but one act. There is no dual legislation. As a rule one version is the translation of the other. The effort is always made to have them exactly coincide, and the legal presumption is that they do. We are aware that, though the Hawaiian language is the original language of this people and country, the English language is largely in use. Of necessity the English language must be largely employed to record transactions of the government in its various branches, because the very ideas and principles adopted by the government come from countries where the English language is in use. Not that it is exclusively employed, or that the use of the Hawaiian language in any instance would not be perfectly regular and legal. The records of our courts show pleadings of all kinds in the Hawaiian language received with as much approval as those in the English. Which language would be used would depend upon the comparative familiarity of the writer with one or the other.

An aboriginal Minister of the Interior, looking only at the Hawaiian version of the Election Law of 1890, might order the descriptive words on the ballots to be printed in the Hawaiian language, he being more familiar with it. No one could say that such a ballot would not comply with the law. Equally legal would be a ballot where the descriptive parts were in the English language exclusively. Such a ballot would strictly comply with the Act as read by the Minister in the English language, there being nothing in the Act directing which language should be used, or that both should be used.

A forcible argument could be made to the Legislature advocating an Act requiring the printing the ballots in both languages, in order that the needed information be furnished to the voters who understand Hawaiian or English. But we do not find that the law on the statute book directs in what language the ballot shall be printed. The employment of either or of both languages would comply with the law.

We remark that our Opinion to the Cabinet, on the 19th January last, only went to the extent of saying that the insertion on the printed ballot of the Hawaiian version of the name of any candidate, in addition to his foreign name, is not forbidden by the statute which prohibits the ballots bearing any " word, motto, device, sign or symbol" other than allowed by the law, viz., the names of the candidates and certain descriptive words, as " election for the year," etc., etc. We nowhere intimated that the Hawaiian paraphrase or equivalent of an English or foreign name should be inserted in order to the legality of the ballot.

In regard to the disputed question of fact, respecting Mr. Waterhouse's name on the ballot, we observe that the interlining of his name, as some Hawaiians would pronounce it, in the petition of voters for his candidacy could hardly be held as a request to the Minister that his name be so printed on the ballot. Also, that if the request was orally made there is no evidence that non-compliance with the request was by design or intentional fraud or discourtesy. Having found that the omission to print descriptive words on the ballots in Hawaiian did not vitiate them, the omission of the Hawaiian version of a candidate's name is equally harmless.

We therefore affirm the decision appealed from and dismiss the petition.

### DECISION OF BICKERTON, J., APPEALED FROM.

The petition sets forth that the petitioners, fifty-one in number, are residents of Oahu; that they voted or were entitled to vote for Nobles of the Kingdom at the general election held on the Island of Oahu on the third day of February, 1892. That the election was held; that proper returns were made, and that certificates of election were made, signed and delivered to the persons so declared to be elected. That duplicates of the certificates, together with the tabulated returns, were transmitted by said Marshal to the Minister of the Interior; that the following named gentlemen were declared elected: J. N. S. Williams, John A. Cummins and Paul Neumann for the term of six years,

31

John Ena for the unexpired term of four years, and Arthur P. Peterson for the unexpired term of two years.

That C. B. Maile, John Ross, Henry Waterhouse, John Emmeluth, A. Marques and Samuel M. Kaaukai, candidates for six years, E. B. Thomas for four years, and James Gay for two years, were formally and legally qualified and registered as such candidates ; that their several names appeared, together with those before named, on the ballots provided by the Minister of the Interior for use.

That it then was and is the law that each ballot should express in the Hawaiian language what it did in the English language; that none of the ballots used at said election contained any Hawaiian words expressing what was printed in English.

That in the preparation and printing of said ballots the Minister of the Interior refused and neglected to insert therein the Hawaiian equivalent of the name of said candidate Henry Waterhouse, viz., the word " Walakahauki," although said Minister was formally requested to insert said Hawaiian equivalent, and although all of the said ballots contained the Hawaiian equivalents of the names of all the others of said candidates having foreign names.

That by reason of such omission from said ballots of said words in the Hawaiian language, and of the Hawaiian equivalent of the name of said Henry Waterhouse, it was impossible for Hawaiian voters for Nobles who were unacquainted with the English language (of whom there were several hundreds) to learn the meaning or particulars of said ballots, and consequently they were thereby deprived of their legal and constitutional rights under the law.

And prays that said election be vacated and declared null and void.

The specimen ballot appended to the petition is in this form.:

ELECTION FOR THE YEAR 1892.

DIVISION OF OAHU. FOR NOBLES.

For Six Years.

C. B. MAILE,
HENRY WATERHOUSE,
J. N. S. WILLIAMS (Wiliama),
PAUL NEUMANN (Paulo Neumana),
A. MARQUES (Makuika),
JOHN ROSS (Kapena Loke),
J. A. CUMMINS (Keoni Kamaki),
JOHN EMMELUTH (Emaluka),
SAM'L M. KAAUKAI.

Special Election. For the Unexpired Term of Four Years.

E. B. THOMAS (Kamaki),
JOHN ENA (Keoni Ina).

Special Election. For the Unexpired Term of Two Years.

JAMES GAY (Kimo Ke),
A. P. PETERSON (Aka Piketona).

The law under which these proceedings are brought is Chapter LXXXVI. of the Session Laws of 1890, being "An Act to Amend and Consolidate the Election Laws of the Kingdom." Sections 87, 88, 89 and 90 of said Act read as follows:

"Section 87. In addition to the methods hereinbefore set forth for vacating any seat in the Legislature, any candidate, or any thirty persons who have voted, or were entitled to vote in the district, may file a petition addressed to the Chief Justice of the Supreme Court, setting forth any cause or causes why an election shall be vacated or a seat be declared vacant. Such petition shall be filed in the office of the Clerk of the Supreme Court within thirty days following an election, and prior to the hearing thereon the Clerk shall receive a deposit of such costs as may be necessary in the case. The hearing may be had before any Justice of the Supreme Court, and shall be held in the Judicial Circuit wherein the election is disputed. Provided, however, that the Supreme Court shall have no jurisdiction over any such case during the session of the Legislature."

"Section 88. A notice of not less than fourteen days shall be given to the Inspectors of such election as may be contested, and to the candidate who shall have been returned, or whose seat is contested, and to any other whose rights or interests are particularly affected, who shall be designated by the Chief Justice of the Supreme Court. Besides such notice, a written or printed notice shall be likewise posted in the district, or published in some newspaper circulating in the district, for not less than ten days prior to such hearing."

"Section 89. No person who has voted at any election shall, in any legal proceeding, be required to state for whom he has voted."

"Section 90. At the hearing, the Justice shall cause the evidence to be reduced to writing in full, or sufficiently to ascertain all of the facts involved, and shall thereupon give judgment, stating all of his findings of fact and the law thereupon, which shall then be transmitted in full to the Minister of the Interior, provided no appeal shall be taken. If such finding shall be that the election was invalid, and the seat therefore vacant, a new election shall at once be ordered by the said Minister."

As Section 90 requires the Justice hearing the case to state "all his findings of fact and the law thereupon," I will first proceed to find from the evidence the facts.

I find the following facts to have been shown and proved by the evidence :

1. That thirty-nine of the petitioners have voted for Nobles at the election held on the third day of February, A. D. 1892, on the Island of Oahu.

2. That four of said petitioners, to wit, A. Marques, E. B. Thomas, C. B. Maile and John Ross, were candidates for Nobles at said election, but were not declared elected.

3. That the petition herein filed was filed in the office of the Clerk of the Supreme Court within thirty days following said election.

4. That notice of not less than fourteen days of said petition, and of the time set for hearing the same, was given to the Chairmen of the several Boards of Inspectors of said election for the

Island of Oahu, and also to all the candidates for Nobles who were returned as elected at said election, by service made by the Marshal upon each of them of a copy of the following order :

" The petition of John Ross and fifty others having this day been filed in the office of the Clerk of the Supreme Court, addressed to the Chief Justice of the said Court, and setting forth certain causes whereby it is claimed by said petitioners that the late election for Nobles, in and for the Island and Division of Oahu, held on the third day of February, A. D. 1892, was and is invalid, null and void, and should be vacated, and praying for a hearing of said petition, and for judgment that said election was and is invalid, null and void.

" Therefore, it is hereby ordered that said petition be heard before such Justice of the Supreme Court as shall be sitting at Chambers, at Aliiolani Hale in Honolulu, on the said Island of Oahu, at 10 o'clock A. M., on Monday, the 21st day of March, instant, when and where all persons interested may appear and show cause, if any they have, why the prayer of said petition should not be granted. .

" And also, that a copy of this order and notice be served by the Marshal upon each Chairman of the several Boards of Inspectors of Election within and for the several precincts of said division of Oahu, and upon J. N. S. Williams, John A. Cummins, Paul Neumann, John Ena and Arthur P. Peterson, they being the candidates who were returned and certified as having been elected at said election as Nobles for said division.

" And also, that a copy of this order and notice be published in the English and Hawaiian languages, respectively, in the *Pacific Commercial Advertiser* (in English) and in *Ka Leo o ka Lahui* (in Hawaiian), they being newspapers printed and published within said island and division, for the space of ten days prior to the date hereby fixed for the hearing of said petition."

5. That a copy of said order and notice was published in the English language in the *Pacific Commercial Advertiser* and also in the Hawaiian language in *Ka Leo o ka Lahui*, newspapers printed and published in Honolulu, for more than ten days prior to this hearing.

6. That the said election was held and resulted as follows, viz.: The several Inspectors of Election for the several precincts of said island and division made their respective returns to the Marshal of the Kingdom of the votes cast at the said election in said division for candidates for Nobles, and that the said Marshal thereupon, and acting upon said returns and in conformity therewith, made, executed and signed certificates of election of Nobles for said island and division of Oahu, wherein and whereby it was in substance certified that J. N. S. Williams, John A. Cummins and Paul Neumann were duly elected Nobles for said island and division of Oahu, each to serve for a term of six years next succeeding the said election; that John Ena was duly elected Noble for said island and division, to serve for the then unexpired term of four years next succeeding said election, and that Arthur P. Peterson was duly elected Noble for said island and division, to serve for the then unexpired term of two years next succeeding said election. That an original of said certificates was delivered by the said Marshal to each of the persons so declared to be elected, and duplicates of said certificates, together with the tabulated returns for said election, were transmitted by said Marshal to the Minister of the Interior, as provided by Section 83 of Chapter 86 of the Acts of 1890.

7. That at the said election the following named persons, besides those above named, who were declared as aforesaid to be elected as Nobles, were also candidates for Nobles in said division, and were formally and legally qualified, notified and registered as such candidates as required by law in such cases, and their several names appeared on the ballots which were printed and provided by the Minister of the Interior for use, and which were used at and upon the said election, viz., C. B. Maile, John Ross, Henry Waterhouse, John Emmeluth, A. Marques and Samuel Kaaukai, as candidates for Nobles to serve for the term of six years; E. B. Thomas as a candidate for special election, to serve as a Noble for the unexpired term of four years, and James Gay as a candidate for special election as Noble to serve for the then unexpired term of two years.

8.   That none of the ballots for the election of Nobles printed, furnished and used at and upon the election aforesaid contained any of the words, "Koho ana no ka makahiki (1892)," nor any Hawaiian words specifying the name of the office, or the name of the division for Nobles, or the term of the office, nor, in the case of said special elections, any words in the Hawaiian language specifying the unexpired terms of the office, nor the words "Koho Balota Kuikawa," but that all of said Hawaiian words were omitted therefrom, as appears by the specimen of said ballots.

9.   That none of said ballots contained any Hawaiian equivalent of the name of Henry Waterhouse, and that all of the said ballots did contain the Hawaiian equivalent of the names of all the others of said candidates having foreign names.

10.   That there were about seven hundred native Hawaiians, voters for Nobles on the Island of Oahu, at the time of said election.

As to the facts alleged, that many Hawaiian voters were prejudiced in the exercise of their franchise, or impeded in their voting by reason of the Hawaiian words, expressing in the Hawaiian language what had been printed in English on the ballots, not having been printed on the ballots, or the absence of the Hawaiian equivalent for the name of Henry Waterhouse, there is not one iota of evidence on these questions.  It is not shown in any way that one of these petitioners, or any other voter, desired to vote for Mr. Waterhouse, or failed to find the names of those they wished to vote for on the printed ballot.

As to the question as to whether the words "Hanele Walakahauki" were interlined in the request before or after it was filed by Mr. Waterhouse, the said request being from forty-five voters for Nobles, that he, Mr. Waterhouse, would consent to be one of the candidates for Noble for six years for the Island of Oahu, or whether a formal request was made by Mr. Waterhouse to have these words printed on the ballot, the evidence is very conflicting, and it can only be accounted for from the fact that all were very busy at the time in preparing for the election, and that their memory has failed them as to some of the

minor facts which might explain the conflict in the testimony. In fact, all the witnesses who testified on this question were uncertain on many points of their evidence. It cannot be said that any of these witnesses knowingly or willfully testified to what was not true. The fact, nevertheless, remains that the words "Hanele Walakahauki" were not in the ballot.

Under date of January 19th, 1892, the Justices of the Supreme Court answered several questions submitted to them by Her Majesty's Cabinet, one being the question of inserting the Hawaiian name of the candidate in the ballot. The Justices say in their reply:

"Under Sections 55 and 56 of the Election Law it will be competent for the Minister of the Interior, in having the ballots printed for use, to insert in addition to the foreign name of any candidate, the Hawaiian version or name of such candidate. Such paraphrase or alias is the candidate's *name*, as he is known by a large part of the voting community, and is not a 'word, motto, device, sign or symbol' which are forbidden by the law to be on the ballot. The candidate's name may be printed in the form suggested in your letter, *i. e.*, John Smith (Keoni Kamika)."

This opinion does not make it necessary to insert the Hawaiian name or alias of the candidate, but simply holds that it would not be a violation of the statute to do so for the reasons given.

Sections 55 and 56 of the Act read as follows:

"Section 55. The election shall be by ballot only. A ballot is written or printed, or partly written and partly printed paper, containing the names of all persons to be voted for. Every ballot, printed in accordance with the provisions of this Act, shall contain the names of all candidates whose nominations for any office specified in the ballot have been duly made, and shall contain no other names."

"Section 56. The ballot for Representatives shall be of white paper, and the ballot for Nobles of blue paper. Specimen ballots shall be of red or green paper. The paper shall be of uniform weight, thickness, and of the same sizing color. It shall

bear no word, motto, device, sign or symbol other than allowed by this section, and shall be so printed that the type shall not show a trace on the back. Besides the name or names to be voted for, it shall contain nothing excepting the words, 'Election for the year ———,' the name of the office and the name of the division for Nobles or district for Representatives. And in the case of a special election it may also contain the words specifying the term of the office and also the words, 'Special Election.'"

The question is, does the absence of the words "Hanele Walakahauki," which certainly could not be claimed to be a Hawaiian translation of the name Henry Waterhouse, invalidate the whole ballot? I think not. It contained the name of Henry Waterhouse, and that gentleman says that is his name. A man has one name, which should be the name given to him by his parents; he may have any number of nicknames or aliases, but none of them is his proper name. It may have been a disadvantage to Mr. Waterhouse to have this native name left out; whether it was by his own or others' neglect is not the question. The only question that I can consider is, has the law been complied with by only inserting the name of Henry Waterhouse? I hold it has, and in that respect the ballot is a good one.

The next question is, does the statute require that the ballot shall contain, in the Hawaiian as well as in the English language, all the words which it is required to contain?

The Act itself, after it is passed by the Legislature, is sent to the Sovereign for approval and signature. If the bill be approved and signed by the Sovereign it becomes a law; and if it fails to receive the approval and signature, the Constitution provides how it may become a law. See Article 48 of the Constitution. The law is then published in the newspapers by the Minister of the Interior, in whose department it has been deposited and preserved; this gives the law effect in ten days after the publication on Oahu, and thirty days on each of the other islands, unless otherwise specially provided in the Act. Chapter 1, Compiled Laws. After the close of the Legislature, all laws passed at that session are published in book form by the

Government, in English and Hawaiian versions—one is a translation of the other.

Section 1493, Compiled Laws, provides: "If at any time a radical and irreconcilable difference shall be found to exist between the English and Hawaiian versions, the English version shall be held binding." It is natural, then, that where the law does not specially provide that any matter shall be printed or published in both languages, (as it does do in our Law on Divorce, Compiled Laws, Section 4, p. 435), the version that is held to be binding would be the one used in case there should be any difference found to exist in the two versions.

I am free to say that this ballot might have been printed in the Hawaiian language only, using the words "Koho ana no ka makihiki" (1892), and the words in the Hawaiian language specifying the name of the office, the term of office, and, in the case of a special election, the words "Koho Balota Kuikawa," or they might have been printed in both languages on the same ballot paper without there being any violation of the law ; one line would be simply a translation of the other, and the ballot would contain nothing more than the law allowed, for the law, either in the English or Hawaiian version, does not specifically say what language the ballot shall be printed in; it is silent as to any requirement that the ballots shall be printed in the English, Hawaiian, or both languages. It was in the power of the Legislature to make any provision of this nature, and those preparing the ballot would have had to comply with the requirement of the law. It seems only right and proper that the ballot should have been printed in both languages, and that the Legislature should have so provided, but they failed to do so. The Court cannot supply a want in the law, or legislate and make laws; the Legislature, which is the representative of the people, makes the laws, and I have to take the law as I find it in the statute books and apply it to the facts of the case before me. I cannot stretch it to suit circumstances; I am confined to its provisions and requirements, and cannot go beyond them.

I have been inclined to reserve this question of law for the Full Court, under Section 834 of the Compiled Laws, it being

an important one under a new statute; but as Section 90 of this statute specially requires the Justice hearing the matter to give judgment, "stating all of his findings of fact and the law thereupon," and Section 91 also provides that "the decision in all respects shall be subject to appeal to the Supreme Court in Banco," I feel it is incumbent on me to pass on the question. I therefore hold the ballot used at the last election for Nobles on the Island of Oahu, a specimen of which is here in this matter, being the one in question in this case, is a good ballot and complies with the requirements of the statute; consequently, on the findings of fact and law made by me herein, I must deny the prayer of the petitioners and dismiss the petition.

And it is so ordered.

*A. S. Hartwell* and *C. W. Ashford*, for petitioners.

*Attorney-General Whiting* and *F. M. Hatch*, contra.