MAHI LONOAEA, KAHAKUEA, PEKUHOLO, W. B.
KEANU, PALEA, J. B. KANANA, WM. NAWAI, GEO.
C. McNAMARA, IOANE KANAKAOLE, KAHALE-
HAU, WM. SMITH, HENRY SMITH, M. KEOHO-
KALOLE, PAHOA, KIPAKUHIA, THOMAS CLARK,
WM. H. DANIELS, A. N. KEPOIKAI, JOHN TUL-
LETT, PAALUHI, WAAPA, G. B. KAANUOKU,
KEALO, YOUNG HEE, KAAWA, IOKAMA, J. DU-
TRO, WM. AKI, MAKAOI AKI, KANAKAOKAI,
PAAOAO, MRS. KANUI KEAHI, PAE, NAPAHU-
LOHOA, NOEHUELUA, NAOPII, ENOS & CO., and
Estate of KAMAKAHUKILANI *vs.* THE WAILUKU
SUGAR COMPANY and CLAUS SPRECKELS.

WATER CONTROVERSY.

HEARING, OCTOBER 4, 1894.     DECISION, MAY 20, 1895.

JUDD, C.J., BICKERTON AND FREAR, JJ.

A corporation doing business as a sugar plantation had acquired by
prescription the right to use the water by day from a river, when
water was scarce, to irrigate its sugar-cane planted upon lands enti-
tled to water by ancient usage. The change in the method of
use of the water from the system of each landholder having the
water during a specific portion of the day or night for the various
smaller branch ditches from the main ditches, to the system by
which the cane planters used the water by day and the kalo planters
by night was adverse because enforced. It was also continuous for
over twenty years.

An omission to use the water when not needed does not disprove a
continuity of use shown by using it when needed.

Water may be transferred from land to which it is an easement to land
not entitled to it, providing no one is injured thereby.

Under the statute containing the law relating to Commissions of Private Ways and Water Rights the Supreme Court on appeal has jurisdiction to render such a judgment as shall be just and equitable between the parties.

OPINION OF THE COURT BY JUDD, C.J., IN WHICH BICKERTON, J., JOINS.

A controversy having existed for some time between the Wailuku Sugar Company, whose sugar plantation is situated in the district of Wailuku, Island of Maui, and the holders of parcels of land in that district as to the rights of the respective parties to use the water of the Wailuku river for irrigation, it culminated in a suit which was held before A. G. M. Robertson, Esq., who was appointed by the Minister of the Interior a Special Commissioner of Private Ways and Water Rights, the regular commissioner being disqualified from interest.    Mr. Robertson proceeded to Wailuku, and during some weeks heard the testimony adduced by the respective parties and arguments of counsel and on the 2nd July, 1894, rendered his decision.    The testimony was very voluminous, the transcript of the stenographer's notes filling 790 pages. Over thirty witnesses were examined and a large number of exhibits were filed.    Upon the filing of the decision of the commissioner all the parties appealed to this Court.

We understand that the merits of the whole controversy are open on this appeal upon the evidence sent up and the law involved, and we are authorized to render such a judgment as shall be just and equitable between the parties. Chap. 26, Laws of 1888, Sec. 4.    *Davis vs. Afong*, 5 Haw., 216.

Following is the decision of the commissioner.    We adopt its statement of the petition of the plaintiffs, its description of the *locus in quo* and the points made in argument.

DECISION OF THE COMMISSIONER.

This is a controversy in regard to the rights of these parties in the water of the Wailuku river.    The suit was

commenced by Mahi Lonoaea and two others against the Wailuku Sugar Company.    On the day set for hearing thirty-four other persons, claiming to be interested were made parties plaintiff, and subsequently Mr. Claus Spreckels intervened as a party defendant.

The complaint reads as follows:

Plaintiffs complain that defendant has unlawfully constructed a dam in the Wailuku river in Iao Valley in said district, near the kuleana of Manienie, and now unlawfully maintains the same, whereby the flow of water in said stream is obstructed and diverted, and the plaintiffs deprived of water to which they are entitled and otherwise damaged.

Plaintiffs further complain that defendant has in said district unlawfully and to the detriment of plaintiffs enlarged and tightened the dams supplying the Kalaniauwai, an auwai leading from said Wailuku river, and has constructed a new and illegal dam to supply said auwai and now illegally maintains the same, whereby the said auwai is made to carry more water than it is entitled to, and the plaintiffs are deprived of water according to their right.

Plaintiffs further complain that defendant has in said district unlawfully enlarged and deepened the Kalaniauwai, and now unlawfully maintains said auwai in such enlarged condition, whereby plaintiffs are deprived of water according to their right, and defendant takes water to which it is not entitled.

Plaintiffs further complain that defendant in said district has illegally tapped said Kalaniauwai and by means of a flume illegally constructed by it has diverted large quantities of water from the said auwai and now illegally maintains said flume and continues to illegally divert water from said auwai, whereby the plaintiffs have been deprived of water to which they are entitled, and the defendant has taken water upon land not entitled to the same.

Plaintiffs further complain that defendant in said district has unlawfully enlarged the Kamaauwai, an auwai leading from said river, and now maintains the same in such enlarged

condition and unlawfully diverts large quantities of water into said auwai beyond the amount to which it is entited, and has taken water to land not entitled to the same beyond the limits of said auwai, whereby the plaintiffs have been deprived of water to which they are entitled.

Wherefore the plaintiffs pray that defendant may be summoned to appear and answer this complaint at a time and place to be fixed for hearing the same, that the rights of the parties in the water of said stream may be adjudicated, that all illegal dams, flumes, and structures erected or maintained by defendant may be abated, that all illegal use of said water by the defendant may be restrained, that the method by which defendant obtains water from said stream may be regulated, for costs and such other relief as may be just.

There were formerly two sugar mills at Wailuku, and several independent planters, but the different concerns have since consolidated into one corporation, the Wailuku Sugar Company.

The valley of Iao where the Wailuku river has its source is surrounded by precipitous mountains, a narrow defile affording an outlet for the river which flows down a gulch in a north easterly direction to the sea. A short distance below the defile the river is tapped, on the north bank, by an artificial ditch called Kalaniauwai, and a little further down, but on the opposite side, by a similar ditch called Kamaauwai. These two auwais have existed immemorially and were evidently constructed for the purpose of irrigating kalo on the plains which stretch away to the northward and southward of the river. Several minor auwais have, since ancient times, tapped the river at different points lower down and spread the water through the lands in the gulch on either side of the river bed. In the case of *Peck vs. Bailey*, decided in 1867, Chief Justice Allen said: "My opinion is that the Kamaauwai, Kalaniauwai and the Wailuku mill water courses are each entitled to the quantity of water which has usually flowed therein and that the owners of neither can rightly divert water from the other." (8 Haw., 664.) These

rights are subject, of course, to such rights as persons may subsequently have acquired, by grant or prescription, to interfere with the ancient flow. The defendant has acquired by adverse use the right to irrigate many acres of what was formerly kula land. Most of the land in the gulch is still in kalo but on the plains kalo patches have been replaced to a large extent by cane fields. More particularly is this the case on the lands watered by Kalaniauwai. The ancient water rights of the kalo lands in this district were not clearly defined either as to quantity or time, the only limit being a sufficient quantity for the kalo. The case of *Peck vs. Bailey* decided that Kalaniauwai and Kamaauwai were entitled to the same quantity of water, (8 Haw., 673.) The weight of evidence is that these two auwais are entitled to one-third each of the water of the river in ordinary times, the remaining third to flow down the stream for the lands in the gulch.

In times of freshet the bulk of the water would naturally flow down the stream because of its larger capacity and greater fall. "And if at any time there is a drought, and the water is diminished in the Wailuku river, these auwais (Kalani and Kama) will lose *pro rata.*" (*Peck vs. Bailey*, 8 Haw., 672.) The volume of water in the river varies constantly but it is only in times of drouth that serious disputes arise. When there is an abundance of water a person may take more than he would be entitled to in dry times without injury to any one else. And sound policy requires that the water should be put to some use rather than be allowed to run to waste.

The defendant claims title by prescription to all the water of the river in the day time, say from 4 A. M. to 4 P. M., and therefore the right to use the water between those hours to suit its own requirements and convenience. It is in evidence that while it is inconvenient, if not impracticable, to irrigate cane by night, kalo can be watered as easily by night as by day. For thirty years or more it has been the practice of the cane planters to irrigate their fields by day, and after reservoirs were built to take water for them at night. The

kalo growers also had the right to take water by day as well as at night. In a time of drouth, however, it was found more economical to make a division between the cane and kalo, and it was agreed that the cane should have the water during the day and the kalo at night. When the scarcity was relieved all the owners were at liberty to take water day and night as before. Upon a recurrence of drouth the former arrangement would be revived; the cane planters would refrain from taking any water at night in lieu of having all of the water during the day. This seems to have been the origin of the system which has been continued to the present time. But now the kalo growers object to its further continuance, claiming that the Wailuku Sugar Co. not only takes more than its share of the water during the day but also takes large quantities at night.

The defendant has not sustained its claim of title by prescription. "An adverse right to an easement cannot grow out of a mere permissive enjoyment for any length of time." (*Peck vs. Bailey*, 8 Haw., 669.) The day and night division between the cane and kalo having originated in mutual arrangement the plaintiffs were entitled to notice of the beginning of the adverse use. (See *Kalaeokekoi vs. Kahanu*, 4 Haw., 481.) To establish the prescriptive right, it was necessary for the defendant to prove that it has used or claimed the right to use all the water at all times for twenty years. This has not been done. The evidence shows that the use by the plantation of the water by day has been neither uninterrupted nor continuous. Several individuals have persisted in irrigating by day. It is in evidence that the plantation does not irrigate on Sundays, and also that in times of freshet the surplus is anybody's water. Mr. W. H. Bailey, in his deposition, testified that the water ran continuously in the auwais night and day in ordinary times, but when there was a shortage he took the water into the auwais in the day time and turned the water at night down the river. He also said: "On the Kamaauwai we simply left the division as it was day and night all the time."

On the specific questions raised in the complaint, I find as follows:

(1) A dam has recently been built by the defendant at the kuleana of Manienie but, according to one witness, "not constructed in a place where the water could be turned on." It does not appear that any water is being diverted by means of the dam. Manienie has a water right although at present the land is uncultivated. In order to take water from the river it is usual to tap the river by means of a dam and ditch, and as the dam in question may be used for a legitimate purpose and is not now used for any illegal purpose, I decline to order its removal.

(2) The evidence shows that the freshets, to which the river is subject, sometimes come down with such force as to sweep away the dams that turn the water into the auwais and alter the river bed to such an extent that it is impossible to rebuild the dams exactly as they were before. This has happened to the dams at the head of Kalaniauwai. Having apportioned to this auwai one-third of the water of the river the size, shape or number of dams is immaterial so long as they do not divert more than that proportion of the water. (See *Wong Kim vs. Kioula*, 4 Haw., 504.)

(3) The preponderance of evidence shows that in the year 1880, Kalaniauwai was deepened and slightly widened, and that since then more than its share of the water has flowed in that auwai. There is no sound objection to the increase in size provided than no more than the proper proportion of water be taken in times of scarcity. When there is a superabundance of water in the river it is better to take as much of it as can be profitably used than to let it run to waste into the sea. When there is more water going down the river than is necessary for the domestic and agricultural purposes of the land owners in the gulch, no one is injured by the taking of an unusual quantity into the auwais.

(4) About the year 1886, the defendant constructed a flume tapping Kalaniauwai a short distance below its head. This flume crosses over to the south side of the gulch and

the water is then conveyed through a ditch on to kula lands and used for the irrigation of about 120 acres of cane there planted. Plaintiffs claim that this is an illegal diversion depriving them of water to which they are entitled. Defendant contends that the water being used on these fields is the water belonging to several pieces of kalo lands scattered through the gulch and now in disuse, together with the surplus water of other kalo lands now planted in sugar cane. Witnesses estimate that the amount of water necessary to irrigate one acre of kalo is sufficient to irrigate from three to twelve acres of cane. It has not been shown, however, that the defendant uses only the minimum amount of water necessary on its cane. The amount of water required for cane and kalo varies to such an extent that it is very difficult to say that four or five acres of cane may be irrigated, because a one acre kalo patch has been dried up, without injury to the rights of others. The court in *Peck vs. Bailey*, said that the defendant " had a right to transfer the water from his kalo lands *adjacent* to these lands if by so doing he did no injury to other persons." (8 Haw., 673.) In the more recent case of *Kahookiekie vs. Keanini*, the court said: " Without deciding the question whether a water right by prescription to be used upon certain land could be diverted to and used upon another piece of land, we are of opinion that to do this as defendant has done is a manifest injury to the plaintiff. * * * And even if the defendant took water in the flume to the kula land only during the hours that he was entitled to water for his lower lands, it is not clear that it would not be an injury to those whose time for the use of water followed his—for the disuse of the lower auwais during his hours would tend to make them dry and absorb more water when it was again turned into them." (8 Haw., 312.) It not being clear that the new use under consideration is not injurious to the other owners of water rights, I hold, under the authority of the cases cited that the taking of water in the flume in question is an unreasonable and therefore illegal use.

(5)  Plaintiffs have failed to show that Kamaauwai has been enlarged.  And the taking of water to land not entitled thereto beyond the limits of the auwai has been discontinued for some time.

I therefore hold :

(1)  That Kalaniauwai and Kamaauwai are each entitled to a continuous flow of one-third of the water leaving a like proportion in the stream.

(2)  That no water be taken across the gulch in the new flume after the crop now growing on the land irrigated by means of said flume is taken off.

(3)  That the costs be divided.

## BY THE COURT.

It appears to us to be well settled by the evidence, that in a rainy time when the Wailuku river was running full and all the watercourses leading from it were also full every one could use the water from the river for irrigation without reference to the time of user or the quantity taken.  No one questioned this.  When all had enough no one wanted more than he could use.

So, also, when the rains, either those falling in the mountains only, or when they were general, made freshets in the river, the Wailuku plantation would run off into reservoirs surplus water that otherwise would run into the ocean. This conservation of storm water was free to all who desired to appropriate it and we see no valid objection to its practice being continued.  It would become objectionable if the plantation or any party by the creation of immense reservoirs or other mechanical structures should take all the storm water and deprive others of an opportunity to do the same.

No one testifies to any difficulty when rains are copious and water is plentiful.  But it is in dry times, when the water is low in the river, that anxiety is felt by the cultivators of sugar cane and of kalo that they may not have enough water for their life and growth.  Difficulties and

struggles then are in order. Owing to the climate an arid condition prevails during a great part of the year and water must be husbanded and used with economy to supply the needs of agriculture. The district of Wailuku was once thickly settled, kuleanas to the number of over 400 were granted to natives and others. A large proportion of these cultivated kalo with the aid of water from the river as described by the commissioner in his decision above set forth. The cultivation of sugar cane on a small scale was begun by Kamehameha III. in the early fifties. Then followed a few years later the plantation of Peck and others, the inception of the Wailuku plantation, and that of the Baileys. The testimony shows that before cane culture was begun, the natives had frequent quarrels in regard to the distribution of water during times of drouth. There was no definite and regular method of distribution of water. The konohiki or head man of the land divided the water, in times of scarcity, taking care that the kalo patches of the chief who held possession of the ahupuaa, were filled first, and he endeavored to provide that all should have sufficient to keep his crop in condition. We understand that agreements were made as to the care of the ditch called Kamaauwai and the distribution of water therefrom. Certain law suits were had, notably that of *Peck vs. Bailey*, reported in 8 Haw., 658. This case is not relevant to the present cause, for it was between parties whose several interests are now held by the defendant corporation, and the decision merely held that the two auwais Kamaauwai and Kalaniauwai were entitled to an equal amount of water from the river. In proceedings subsequent to the reported case of *Willfong vs. Bailey*, two-fifths of the water of Kamaauwai were awarded to Bailey. 3 Haw., 479. We find that owing to the inconvenience of the method of irrigating cane by night, the cane planters began to use the water only during the day and the natives took it for their kalo at night. Mr. E. H. Bailey says that the custom grew up of irrigating cane by day and kalo by night with the introduction of cane culture in the district. He says that this

practice was a growth arising out of the new conditions not the result of a formal agreement. Many other witnesses testify that this was the custom dating as far back as their residence in the district. This fact was found by the commissioner. No agreement in writing to this effect was produced. None is testified to as having been executed. It seems quite certain to us from the evidence that the cane planters took the water by day with the acquiescence of the kalo . planters or kuleana holders, who took it by night. This is claimed by plaintiffs to be a parole license and revocable at will of the licensors. But the using of the water by day by cane planters was not by license for the cane being put either on kalo land which had acquired water rights by prescription or upon land watered with the quantum of water transferred from kalo land under the same ownership, the cane planter claimed an absolute right to the water and the method of use was the only ingredient in dispute.

The doctrine laid down in *Rerick vs. Kern*, 2 Am. Leading Cases, 682, is as follows : " An executed license, the execution of which has involved the expenditure of money or labor, is regarded in equity as an executed agreement for valuable consideration, and as such will be enforced, even when merely verbal, and relating to the use and occupation of real estate." It is not questioned that a large expenditure of money has been made by defendant corporation not only in erecting mills, but in flumes and ditches and cane culture upon the understanding that it could use the water by day. It would be impossible, except for this method of using the water by day, to use flumes at all.

It is claimed by defendant corporation that as both plaintiffs and defendants had water rights in the Wailuku river they were tenants in common and had made a parol partition of the water which after the lapse of time and the enjoyment by each of the rights in severalty it would be inequitable to disturb. We find no necessity to resort either to the theory of an irrevocable license or an executed parol partition. We find sufficient evidence to sustain the right to use the water

by day by defendant corporation by prescription as against the majority of the plaintiffs. Certainly the method or custom, or agreement or by whatever name the witnesses call it, of the plantation using the water in this way has continued for a large part of its estate for over twenty years and for about thirty years for some of its estate. It is urged by plaintiffs that this day use was not continuous, because when water was abundant both plaintiffs and defendants would use it during the day and night, and the defendant would not use it at all during the day because it was not needed. It is well settled that an omission to use when not needed does not disprove a continuity of use shown by using it when needed. *Bodfish vs. Bodfish*, 105 Mass., 319. *Hesperia Land & Water Co. vs. Rogers*, 23 Pac. Rep., 196. The fact that some of the kalo patches maintained their use of water by day, does not break the continuity or destroy the adverse nature of the right acquired. The right might be acquired as against some and not against all of the uses of water from the river.

Its use was adverse. This is proved by the fact that it was taken and enforced. Its use was certainly notorious and open. It is also proven by the establishment of the use of the kuleana holders with the exception of a few, by night only. The occasional taking of water by the plantation lunas by night is characterized by the plaintiffs and their witnesses as "thefts," i. e. the taking of what did not belong to the plantation. These unauthorized and disavowed trespasses of agents of the defendant corporation are confessions that it had no right to the water at night, which goes far to show that it claimed the right to the water during the day— as its proportion of the water. We remark here that these furtive acts seem, by the testimony, to have been provocative of this litigation.

It is alleged as a reason for claiming relief prayed for, that the defendant corporation has greatly increased the area of land under cultivation, and that this is shown by the increased yield. We find that the exhibits filed do not show

any great increased yield except such as may be explained by improved machinery used in manufacture. The impoverishment of soil by successive cropping is made up by increased use of fertilizers. Greater diligence is shown to be used by the plantation in keeping its ditches clean of weeds and moss than is used by the cultivators of kalo, who, in addition to negligence in the care of their smaller ditches, do not now tamp their kalo patches to make them hold water. A considerable amount of loss of crop from scarcity of the water actually reaching the crop may be fairly attributed to this neglect.

Although it is not an argument in favor of sustaining the present method of use of the water, if we should find that its inception was by an agreement or license capable of being revoked, we are satisfied that this conclusion we have come to works no injustice to the plaintiffs because it is abundantly shown that it is more advantageous to cultivators to have the use of a given body of water in a given limited space of time than a smaller body of water supplied in double the time. To establish a system by which what water was in the river should be allowed to flow continuously day and night in all the main auwais in the proportions found by the commissioner, and then be distributed in all the numerous branches and subdivisions of these auwais, would be wasteful and exceedingly injurious. It would be wasteful, for neither kalo nor cane require a continuous flow of water upon them. To cane it would be, on the contrary, injurious. There is evidence that the ancient method of irrigation before cane culture began was not always a perpetual flow of water in all the auwais, but in times of drouth, sometimes all the available water would be put alternately in one large auwai and then in the other. But the constant flow of water day and night in all the auwais would prevent the alternation of the use of water on different fields—the cane not ordinarily requiring irrigation oftener than once a week or ten days. It would probably cripple the defendant corporation in its use of water for fluming purposes, without being

of any advantage to the plaintiffs. It is doubtful whether in very dry times a kalo patch near the sand hills could be reached at all by its small quota of water the loss by evaporation and sinking into the ground of the ditch being so great. A large volume of water would go where a small volume would be lost before it reached a given point. It would require the greatest vigilance, night and day, on the part of all cultivators to secure for themselves a continuous proportion of the water and undoubtedly frequent breaches of the peace would occur in the struggles for water.

Statements of areas of land held in fee and leasehold by the defendant corporation are in evidence showing that about one-half of the land in Wailuku, which has acquired right to water by prescription, is in its possession. The exact claim of the corporation of its water right is the substantially whole flow of the two ditches Kalaniauwai and Kamaauwai and the mill stream from 4 o'clock A.M. to 4 o'clock P.M. of each day from Monday to Saturday inclusive, and on Sunday the right to run water into its reservoirs from 4 A. M. to 10 A. M. This would be about six-fourteenths of the entire supply; which is less than the amount to which one-half of the land which had water rights would be entitled to.

We held above that we found it well established that the defendant corporation had acquired a prescriptive right to use the water by day. This is too general a proposition for there is proof that certain land owners had, in order to preserve their right to water by day, persisted in such use. These parties, to wit, E. H. Bailey and W. H. Daniels for the lands testified to by them, we find are excepted from the operation of the right established in favor of defendant corporation. There are others who used water by day by express permission of the defendant, and others still against whom the plantation does not seem to have effectually established the easement claimed by it. These are generally owners of town lots and this decision does not deprive the land owners in the village of Wailuku from the use of water for domestic purposes during the day or night.

We find no objection either in law or reason to allowing the owner of land which is entitled to water from transferring the same amount of water to other land providing he thereby works no injury to others.

It was so held in *Peck vs. Bailey*, 8 Haw., 658 (1867) and in *Kahookiekie · s. Keanini,* id. 310, it was found that the transfer would be injurious to others and therefore not allowed.

In regard to the specific questions raised by the petition, we sustain the decision of the commissioner in refusing to order the dam at Manienie removed, for the reasons given by him. Having sustained the claim of the defendant corporation to the use of this water during the day, it is of no importance whether the main auwais (Kalani and Kama) have been enlarged. In regard to the passing over of water from the Kalaniauwai by a flume (flume D. on the map) to water kula land 120 acres on the opposite side of the river during the day, we find that the right to use water on this land as well as the right to use water upon about 9 acres of land in Puohala between the old and new lines of Kalaniauwai, cannot be sustained as an easement to these lands, for they were not entitled to water and the use of water was begun within twenty years past. But the claim is made that between twenty and thirty acres of kalo land entitled to water are now owned by the corporation and are left uncultivated and the water of these lands are transferred to this new land. If this transfer of water diminished the supply of water to the kuleana holders we should enjoin its use, but the right established to defendant corporation to use the water by day only could not diminish plaintiffs' supply by night.

The judgment of the Court is that the plaintiffs excepting those whose rights are specially considered herein above are entitled to such amounts of water as they have acquired by prescription for their various lands during the night from 4 o'clock P. M. to 4 o'clock A. M. of each day from the various large auwais leading from the Wailuku river; that the de-

fendant corporation, the Wailuku palantation, is entitled to the water for its present estate from these auwais on each day of the week, excepting Sunday, from 4 o'clock A. M. to 4 o'clock P. M., the dams to be kept substantially as they are at present, composed of loose stones and dirt; the defendant corporaticn to carry out this order.

Costs to be divided.

*F. M. Hatch* and *V. V. Ashford*, for petitioners.

*W. A. Kinney*, for defendant corporation.

*P. Neumann*, for defendant Spreckels.

---

OPINION OF FREAR, J.

The plaintiffs complain of a number of acts alleged to have been done to their injury by the defendant company. Most of these are of comparatively little importance and, as found both by the commissioner and by the majority of this Court, have either not been proved or else have been shown to work no injury to the plaintiffs.

The main issue relates to the irrigation of lands to which no water rights are appurtenant, namely, 9 acres of cane land between the old and new beds of the Kalaniauwai and 113 acres of cane land irrigated by means of a new flume which taps the Kalaniauwai.

Upon this issue the commissioner and the majority of this Court differ, and I cannot agree wholly with either.

The defendant company attempts to justify the maintenance of the flume and the irrigation of new land on two ground; first, that it has acquired a prescriptive right to all the water in the Wailuku stream during the day time, that is, from 4 A. M. to 4 P. M., and that therefore it is immaterial to the plaintiffs what use is made of the water during those hours, and, secondly, that it has purchased many acres of kalo lands and has a right to transfer the water appurtenant to such lands to new cane lands.

As between the general contentions for a continuous use of water by all parties all the time on the one hand and an alternate day and night use by the company and others respectively on the other hand, I agree with the majority of the court that the latter method of division has become established by prescription. But this statement needs qualification.

As found by the majority of the court, some inhabitants of the town of Wailuku, for domestic and garden purposes, and the owners of a few small tracts of land, for irrigation purposes, have retained the ancient right to use water both day and night; also the day use by the company does not include Sundays.

Further, as not found by the majority of the court, the defendant company has retained its right to water certain cane lands in whole or in part at night, such as those depending on the smaller branch of the Kamaauwai, and perhaps a few tracts of land formerly planted in kalo in the valley. The evidence as to the time when the company ceased irrigating certain cane lands in the valley at night is somewhat indefinite, but it would seem to be within twenty years last past. But the evidence as to the taking of water at night as well as by day for cane from the smaller branch of the Kamaauwai is unmistakeable; according to the undisputed testimony of the defendant's own witnesses, Mr. W. H. Bailey and Mr. G. Armstrong, the taking of such water at night has continued without interruption to the present time. The greater part of the water has been turned from the Kama as well as from the Kalaniauwai into the stream at 4 P. M., but the subdivision of the water in the Kamaauwai itself whether of the larger quantity by day or the smaller quantity at night has never been changed except by the sinking of the flume at the point of division so as to increase the flow of water in the larger branch.

Further, the company has the right to water at night for many pieces of kalo land which it has acquired in recent years and which are not cultivated in cane.

Further, it is agreed by all that during the greater portion of the year, when there is an abundance of water, every one has a right to take it both day and night. This was the ancient custom and no one has ever exercised a right adverse thereto.

Two further qualifications of the general rule of an alternate day and night right should be made. These although only natural inferences from the above findings and involving only elementary principles, should be stated, since they show that this case cannot be disposed of on the ground that the company has a right to all the water during the day and that therefore it is immaterial to the plaintiffs what use is made of it during those hours.

In the first place, the day right is not a personal right or right in gross, but a right appurtenant to certain lands and was acquired by reason of the ownership of those lands and the use of water thereon. The right is commonly spoken of as the company's right, but this is only because the company owns most of the lands to which the day right is appurtenant. The question on principle is not between the company and natives, or between cane and kalo planters, but between the owners of certain lands and the owners of certain other lands. It is only in connection with the ownership of the land that the rights by prescription have been acquired, and none but prescriptive rights are set up in this case. Upon the purchase of any piece of land, whether cane or kalo or other land, and whether by the company or by a native or other person, the water right, if any, whether a day or a night right, or a day and night right, remains appurtenant to that land. Upon the purchase of kalo land by the company, for instance, the night right is not thereby converted into a day right. Such a conversion could not take place as matter of law, and is physically impossible. To hold that the company has the whole day right and others the whole night right personally or even in respect of lands owned by the parties for the time being, but without reference to whether the rights appurtenant to such lands were previously day or

night rights, would be to hold that the company has acquired no additional water rights by its purchase of many tracts of kalo land during the last twenty years, and that it could acquire no additional water rights by further purchases in the future. The rain would not fall nor the stream flow more by day and less at night to suit the convenience of the parties, however much kalo land the company might purchase.

Secondly, the day right, appurtenant to the company's lands, so far as exclusive, is limited to the amount of water actually taken by day on those lands for twenty years. The claim is for all the day water, and the evidence in support of this claim is that the company has in fact taken all the day water whenever needed, that is, in dry seasons, and has omitted to take it at other times, that is, in wet seasons, only because not needed. It is true that an existing right is not lost by a mere omission to exercise it when not needed, and even that a new right may be created by a user whenever needed, though not constant. But it is not true that a new right can be created beyond the extent of the user. As well might a new right be created without any user. The evidence which proves the existence of the right proves also its extent. A mere claim not enforced cannot be the foundation of a prescriptive right. There can be no such right without a user and none beyond the extent of the user. It could not be otherwise, for, since the evidence of the right is the user, there could be no evidence of any right beyond the user. "An easement cannot be prescribed for, unless the party claiming it has actually used and enjoyed it, as well as claimed it as of right. The prescription grows out of the user and intent, and not the claim or intent without the user, however strongly expressed." Washburn, Easements, 95. "The extent of the presumed right is determined by the user on which is founded the presumed grant, the right granted being commensurate with the right enjoyed." Angell, Watercourses, Sec. 224. See also Pomeroy, Water Rights, Sec. 85, and *Edgar vs. Stevenson*, 70 Cal. 286, and cases there cited, relating to rights acquired by prior appropriation,

which do not differ in this respect from rights acquired by prescription. It follows that the water to which the company is entitled by day is limited to the quantity actually taken by day for twenty years whenever needed. If the company has taken all the day water at times, it is not because it had a right to all the water but because it had a right to so much as it needed for certain cane lands and this at times was because of drought, all there was in the stream. It is agreed that formerly all parties had a right to water by day as well as at night throughout the year and there is no evidence that this right has been prescribed against except in favor of certain of the company's cane lands to the extent of the water needed for those lands. There is no evidence or pretension that the company has ever taken for these lands more water than they required when planted in cane. What basis is there, then, for the contention that they have acquired a right to all the day water, which during the greater portion of each year is probably sufficient to irrigate twice that area of cane land? Again, the company itself asserts that it can and does irrigate both the old and the new cane land with the day water alone, and does not even pretend that it uses less on the old land now than formerly, and therefore it follows that it uses more day water now than formerly, by the amount used on the new land, and that, if it has a right to water the new land because the old land is entitled to all the day water, it must be because the old land acquired a prescriptive right to more water than has been used on it,—which is impossible. To allow the company to take all the day water as a prescriptive right appurtenant to certain of its cane lands would be to allow it to take during a large portion of the year much more than it ever yet has taken; it would be to allow it to lengthen the season during which others have lost the day right by prescription; it would be to allow it, by further extending its day uses in future, to deprive others of the right to take any day water at all, even in the wet season, although they have enjoyed this right from time immemorial; and, too, since the

company has in addition the right to use night water on the kalo lands which it has purchased in recent years and which have not lost their night rights, it would be to allow the company probably nearly two-thirds of all the water, that is all the day water and nearly one-third of the night water, although it owns only about one-half of all the land formerly entitled to water and probably not more than one-third of the land now entitled to water outside of its cane land. If the company should be allowed to irrigate new land because it has a right to all the day water, this would not prevent it from continuing to use its share of the night water.

No doubt either the company or others might at pleasure, day or night, in times of plenty, use surplus water, that is, water, if any, to which no one had acquired a right, or perhaps even water to which rights had been acquired but were not for the time being enjoyed, for no one would be injured thereby. But in dry times, when all the water is needed, the question becomes important, what are the rights of the parties? The court is required by the statute to give such decision as shall be "just and equitable," but "in conformity with vested rights;" that is, it has equitable jurisdiction, which means, however, not that it may decide according to personal views of justice, but only according to established principles and existing rights.

Since the right of the company is limited to a certain quantity of water, determined by actual user for the prescriptive period on certain of its lands, it cannot irrigate new land as of right except by relinquishing or diminishing its user on old lands. It has not relinquished or diminished the use of water on its old cane lands, and therefore the only question is whether it does and may take sufficient water from its kalo lands for the irrigation of the new cane land. If it may irrigate new land, it must be, not because it owns the whole day right, but because it may transfer water from land to which it is appurtenant to land to which it is not appurtenant.

As to the right of transfer, the general rule is that "a

person entitled to divert a given quantity of the water of a stream, may take the same at any point on the stream, and may change the point of diversion at pleasure, if the rights of others are not injuriously affected by the change.      *      * It is obviously immaterial whether the right was acquired under an express grant, or by prescription, or rests in the parol license, or the presumed consent of the proprietor. The difference relates to the mode of determining the existence and extent of the right, and not to the manner of its exercise and enjoyment.      *      *      * A change may be made in the place, as well as in the mode and objects of the use, if the quantity of water used is not increased, and the change is not to the prejudice of others." *Kidd vs. Laird*, 15 Cal. 162. This rule was recognized and applied in *Peck vs. Bailey*, 8 Haw., 658, a case relating to the water rights now in question. That case did not differ in principle from this. The only difference was in the fact that the kula lands were adjacent to the kalo lands from which the water was taken, and therefore it was more directly apparent that the change would work no injury to others. The question is one of fact,—whether the change would be prejudicial to others.

Of the 122 acres of new cane land in question, sixty acres were formerly irrigated by water pumped from the smaller branch of the Kamaauwai,—water appurtenant to defendant's lands, but not now used elsewhere. In addition, the company has many scattered tracts of land, purchased in recent years, which have water rights as kalo lands, but which are not now used for any purpose requiring the absorption of water. The question is, whether in lieu of taking from the smaller branch of the Kamaauwai sufficient water for sixty acres of cane and from various auwais and the stream sufficient water for many scattered acres of kalo, the company may take from the Kalaniauwai, sufficient water for 122 acres of cane.

Considerable testimony was introduced for the purpose of showing how much cane land can be irrigated by the water sufficient to irrigate one acre of kalo land. Expert witnesses

placed the area at from three acres to several times that number, the diversity of opinion being largely explained by differences of soil and other conditions in different localities. But it cannot be admitted that the water appurtenant to one acre of kalo land can be transferred to even the minimun number of acres of cane land which it may be estimated as capable of properly irrigating, without reference to the situation of the two lands. If the lands are adjacent there can be little danger of injury to others by the transfer. But to take sufficient water, for instance, for the minimun number of acres of cane land near the head of a stream or auwai, because the taker owns one acre of kalo land near the lower end, might be very detrimental to others, not only because it would be converting a last right into a first right, but because on account of the diminished depth and rapidity of water and greater extent of bed and surface there would be a greater loss from seepage and evaporation, and because upon ceasing to irrigate the lower land the owner would undoubtedly no longer perform his accustomed part in cleaning ditches and therefore owners of other lands would require more water in the ditches than they otherwise would in order to get the same quantity as before upon their lands; they cannot be forced to perform more labor than they had been obliged previously to perform in cleaning ditches, and although an owner of land cannot be compelled to continue the cultivation of his land or to help clean the ditches, yet if he ceases to do so he cannot still claim the same amount of water there or elsewhere; the loss so far as due to his neglect to clean ditches must fall upon him.

But bearing in mind that the burden of proof is upon the party making the change in the mode or object or place of user to show that no injury is thereby caused to others, and that he must keep well within his rights, yet in the present case upon due consideration of the areas and locations of the various kalo lands, some of which are above and others near the head of the Kalaniauwai, and after making all due allowances for possible losses, it seems clear to me that the

irrigation of the new cane land in question is not prejudicial to the rights of the plaintiffs. They are not worse off than they would be if the company should use on its kalo lands the water which it is entitled to by immemorial usage. The plaintiffs will no doubt continue to suffer more or less at times from lack of sufficient water as they and their predecessors (as well as the defendant and its predecessors) have suffered in the past, on account of droughts, and they may suffer further, as has apparently been the case in recent years, because of their own reglect to clean their ditches and tamp and properly cultivate their kalo patches.

The question is not raised in this case as to the time when the water may be taken for the new cane land, but only whether it may be taken. It would seem from the testimony that it would be better for both plaintiffs and defendant that the water should be taken in the day time as far as possible. But whatever the legal rights of the parties may be as to the time of user, any departure therefrom must be by the mutual agreement or acquiescence of the parties themselves.

As to the right of the company to take water into its reservoirs on Sundays from 4 to 10 A. M., or at any other time, by a further transfer of water from its kalo lands (for it has no prescriptive right to do so), the evidence as to the acreage and location of the kalo lands with appurtenant but unused water rights is not sufficient to enable the court to pass satisfactorily upon this question, and the question itself is not raised by the pleadings. It should be left open without prejudice to any of the parties. The same is true of several other questions upon which considerable evidence was introduced.

The complaint should be dismissed but, under the circumstances, costs should be divided.